Christina SPECK, Appellee,

v.

Michael SPADAFORE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.

Filed March 22, 2006.

Ann V. Levin, Harrisburg, for appellant.

Melissa P. Greevy, Lemoyne, for appellee.

BEFORE: BENDER, BOWES and PANELLA, JJ.

OPINION BY BOWES, J.:

¶ 1 This is an appeal by Michael Spadafore ("Father") from the July 1, 2005 order allowing Appellee, Christina Speck ("Mother"), to relocate from York County, Pennsylvania, to Cranberry Township in Butler County, Pennsylvania, with the parties' son. Following our close review of the record, the cogent arguments of the parties, and our consideration of the relevant law, we conclude that the grant of relocation was improper.

¶ 2 Mother and Father, who never married, had a child, Michael Spadafore, Jr., on April 12, 1996. Following their separation, they agreed to a custody arrangement that was memorialized in an order of court on March 4, 1999. The parties shared legal custody; Mother had primary physical custody, and Father had partial custody on Monday, Wednesday, and Friday from 2:30 to 7:00 p.m. and every other Friday from 2:30 p.m. until Saturday at 7:00 p.m. Order, 3/4/99, at 2.

¶ 3 On April 6, 2005, due to her impending marriage to her fiancé, John Shoeman, Mother filed a petition to modify custody to allow her to relocate with Michael, Jr. to Butler County, Pennsylvania. Father opposed the relocation, and the matter was tried on June 27, 2005, and July 1, 2005.[1] Both parties, Mother's fiancé, Father's live-in girlfriend, and Father's two sisters testified. The trial court also interviewed nine-year-old Michael, Jr. in the presence of counsel for both parties.

---

1. The interior of the transcript mistakenly identifies the date as August 1, 2005; however, the cover sheet of the transcript and the docket list the trial date as July 1, 2005.

¶ 4 The trial court permitted Mother's relocation by order dated July 1, 2005, continuing shared legal custody and granting Mother primary physical custody. Father received partial physical custody encompassing the summer months until two weeks before the start of school. The parties were ordered to alternate holiday weekends and Thanksgiving, Christmas, and spring breaks from school. This appeal by Father followed.

¶ 5 Our scope and standard of review are as follows:

> The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it .... Thus an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's findings; and thus represent an ... abuse of discretion.

*Silfies v. Webster,* 713 A.2d 639, 642 (Pa.Super.1998) (quoting *Moore v. Moore,* 535 Pa. 18, 28, 634 A.2d 163, 168 (1993)). An abuse of discretion in the context of child custody does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992). The ultimate test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Silfies, supra* at 642.

*T.B. v. L.R.M.,* 753 A.2d 873, 881 (Pa.Super.2000) (*en banc*), *affd,* 567 Pa. 222, 786 A.2d 913 (2001). This broad power of review is not, however,

> intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear .... Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge.

*Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350, 351–52 (1986) (citations and quotation omitted). "Although the hearing court must determine credibility, its findings must be supported by competent evidence." *In re Custody of Pearce,* 310 Pa.Super. 254, 456 A.2d 597, 599 (1983) ....

"The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264, 265 (1997). This determination is to be made on a case by case basis. *Myers v. DiDomenico,* 441 Pa.Super. 341, 657 A.2d 956, 957 (1995). "Only where [it finds] that the custody order is 'manifestly unreasonable as shown by the evidence of record ...' will an appellate court interfere with the trial court's determination." *Id.* (citations omitted).

*Wheeler v. Mazur,* 793 A.2d 929, 933–34 (Pa.Super.2002).

¶ 6 When a parent files a petition raising the issue of whether it is in the best interest of a child to move outside of the jurisdiction, "a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter." *Plowman v. Plowman*, 409 Pa.Super. 143, 597 A.2d 701, 706 (1991). In every relocation dispute, the court must weigh the custodial parent's desire to exercise autonomy over the basic decisions that directly affect his life and that of the children; a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of the children; and finally, the state's interest in protecting the children's best interests. *White v. White*, 437 Pa.Super. 446, 650 A.2d 110, 113 (1994). When faced with the decision whether to permit relocation, a trial court must consider these factors:

1. The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

2. The integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; and

3. The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the noncustodial parent.

*White*, 650 A.2d at 113 (quoting *Gruber*, 400 Pa.Super. 174, 583 A.2d 434, 439 (1990)). "[T]he fact that considerable distance will increase the cost and logistical problems of maintaining contact between the child and the noncustodial parent does not necessarily preclude relocation when other factors militate in favor of it." *Perrott v. Perrott*, 713 A.2d 666, 668–69 (Pa.Super.1998) (quoting *Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207, 1209–10 (1996)); *see also Graham v. Graham*, 794 A.2d 912 (Pa.Super.2002). These factors must be applied "with the backdrop of the . . . objective of determining the best interests of the child." *Burkholder v. Burkholder*, 790 A.2d 1053, 1058 (Pa.Super.2002) (citing *Anderson v. McVay*, 743 A.2d 472, 474 (Pa.Super.1999)).

¶ 7 Father raises the following issues, which also were delineated in his Pa.R.A.P. 1925(b) statement:

1. Whether the trial court erred in determining that the proposed relocation would substantially improve the quality of life for Mother and the minor child.

2. Whether the trial court erred in determining the integrity of Mother's motives in seeking relocation.

3. Whether the trial court erred in finding the existence of a realistic, substitute visitation schedule that will foster the ongoing relationship between Father and the minor child.

4. Alternatively and assuming that Mother's relocation petition should be granted, whether the trial court erred by failing to provide Father with additional custodial periods during the school year.

Father's brief at 12.[2]

¶ 8 Prior to trial of this matter, the parties negotiated a joint statement of stipulated facts and issues on June 27, 2005, which provided as follows:

I. Facts

1. Defendant—Michael Vincent Spadafore ("Father").

---

**2.** Due to our resolution of this matter, we will not address issues 2, 3 and 4.

a. Age—thirty-nine (39) years old (born August 9, 1965).

b. Occupation—Owner of *Al's Pizza and Sub Shop*, Camp Hill, Pennsylvania.

. . . .

d. Father's girlfriend—Nancy Louise Gray ("Nancy"), thirty-six years old, employed by Union Deposit Giant; Father and Nancy have [been] living together for six (6) years.

e. Father and Nancy are the parents of two (2) children—Lauren Terri Michelle Spadafore (born September 29, 2002), and Jordan James Spadafore (born September 28, 2003).

f. Nancy has [a] child from [a] previous relationship—Lee Roy Gray, twelve (12) years old, who lives primarily with his natural father.

2. Plaintiff—Christina Speck ("Mother").

a. Age—thirty-two (32) years old (born July 18, 1972).

b. Occupation—payroll supervisor for *Balanced Care.*

. . . .

d. Mother's impending marriage will be her first.

e. Mother's fiancé—John Shuman [sic].

f. Mother has no other children.

g. Mother's proposed relocation—Cranberry Township, Butler County, near Pittsburgh, Pennsylvania.

3. Minor Child—Michael Vincent Spadafore, Jr. ("Child").

a. Age—nine (9) years old (born April 12, 1996).

b. Child attends ... [s]chool in the West Shore School District.

c. Address—Child resides with Mother or Father, as governed by the Custody Order.

4. Custody Status

March 4, 1999 Order—Mother has primary custody; Father has partial custody as set forth in the March 4, 1999 order.

Joint Statement of Stipulated Facts and Issues, 6/27/05, filed 9/15/05, at 1–3.

¶ 9 We focus upon whether the record supports the existence of advantages to the relocation and whether the move substantially improves Mother's and Michael, Jr.'s quality of life. In arguing that it does not, Father asserts that the trial court improperly emphasized economic advantages to the move and contends that any alleged benefit of relocation herein is outweighed by the advantages of remaining in the Harrisburg area, such as his nearly daily contact with his son, the support of extended family and the continued vitality of the child's relationships with Father's other two children. Additionally, Father argues that he will be unable to continue to coach Michael's baseball teams as he has done for the past four years, and he will be unable to participate in the child's educational activities. In essence, Father contends that he will be unable to share in the love and rearing of his son.

¶ 10 We are guided herein by our decision in *Meyer–Liedtke v. Liedtke,* 762 A.2d 1111 (Pa.Super.2000), and *Graham, supra.* In *Meyer–Liedtke,* the mother, who had primary physical custody of the parties' two daughters, desired to move with her new husband from Pennsylvania to California. The trial court refused the mother's request to relocate, and we affirmed. This Court's reiteration of the trial court's determination therein is particularly apt:

[T]he court also properly recognized that the personal happiness of the relocating parent cannot be the only or the

predominant factor. The court wisely stated:

> It is beyond the belief of this court that any parent would petition to relocate their children if said relocation would not contribute to the personal happiness and emotional well-being of the petitioning parent. If these particular benefits to the relocating parent were to carry such weight alone, few relocation petitions would demand much attention and time by the court, few would be denied, and the best interest of the children would take a back seat to the best interests of the relocating parent in virtually every case. Instead, this court is of the opinion that these factors are just some of the many that must be weighed by the court on the scales of the best interests of the children.

*Id.* at 1114. In *Graham*, this Court concluded that the mother's desire to relocate was the result of a momentary whim. We also determined that the mother's desire to be with her love interest could not be the basis for uprooting a child from all of his supports, most notably his relationship with his father with whom he spent a considerable part of each week. In *Graham*, the record identified no concrete advantages of the move and instead, highlighted a number of detriments to relocation.

¶ 11 It is clear that in the instant case, contrary to the dictates of *Meyer–Liedtke* and *Graham*, the trial court focused on Mother's personal happiness to the virtual exclusion of the other relevant facts.[3] Indeed, the trial court herein observed that the current custodial schedule in York County "appear[ed] to be working well for [Michael, Jr.]." N.T. Hearing, 7/1/05, at 213. Michael, Jr. had frequent contact with Father every Monday, Wednesday, and Friday from 2:30 until 7:00 p.m. and every other Friday from 2:30 p.m. until Saturday at 7:00 p.m. Order, 3/4/99, at 2. Father has been Michael's baseball coach for four years, and the boy had just been selected for his first all-star team. *Id.* at 115, 191. All extended family reside in the Harrisburg area, most within ten minutes of the parties' homes, including maternal grandparents, paternal grandmother, and aunts and uncles on both sides of the family. *Id.* at 14, 78, 90–91, 156–57, 163–64. Michael, Jr. appeared to enjoy warm cordial relations with his extended family on both sides.

¶ 12 The school district which Michael, Jr. attended, West Shore School District, was comparable to the district Mother identified as the desired relocation district in Butler County. N.T., 6/27/05, at 15–20, 58–59. Michael, Jr. demonstrated that he performed well academically in the West Shore School District, earning A's and an occasional B. *Id.* at 62. Michael had his own bedroom in Mother's townhouse located in "a nice neighborhood [with] a lot of children in our neighborhood." *Id.* at 63. Mother earned $52,000 per year as the director of payroll and accounts payable for Balanced Carrier Corporation, an employer Mother described as having "great flexibility and it's a family friendly work place ...." *Id.* at 14, 43, 62.

¶ 13 Thus, in examining the potential advantages of the proposed move

---

3. Without specifying which factors were met, the trial court concluded that Mother "sustained her burden with regard to proving the *Gruber* Factors." N.T., 7/1/05, at 212. We note that the trial court identified its comments at this July 1, 2005 hearing, at pages 200 to 223 in the notes of testimony, as its reasons in support of the July 1, 2005 custody order appealed herein. Pa.R.A.P. 1925(a) (trial judge shall specify in writing place in record where reasons for order are found).

and the likelihood that the move would substantially improve Mother's and Michael's quality of life, as *Gruber* requires, it is clear that the only improvement is in Mother's personal relationship. There is no advantage to changing the physical living conditions; while Mother and her fiancé planned to buy a larger house, Mother's townhouse was perfectly adequate in terms of space and amenities. There is no financial advantage, at least in the short-term, as Mother planned not to work when she moved, and the distance between parental homes actually would increase transportation costs. There is no educational advantage to Michael, as the school districts in the two locales are comparable.

¶ 14 However, the detriments were numerous and significant. Michael, Jr. enjoyed frequent contact with Father, and the two have a strong bond, as evidenced by their testimony and the findings of the trial court. Mother's desire to move will only result in creating a distance between Michael and Father and the disruption of their relationship.

¶ 15 Permitting relocation also has the harmful effect of separating Michael, Jr. from his brother and sister. When the trial court interviewed him, Michael, Jr. emphasized his enjoyment of interacting with his brother, Jordan, sister, Lauren, and his step-brother, Lee, even before expressing his desire to spend time with his parents. *Id.* at 187, 583 A.2d 434. We have noted the significance of the relationships within a nuclear family, which sustain and nourish a child for a lifetime, but accomplish it day by day, hour by hour, indeed, minute by minute. As Jane Austen stated so eloquently, "Children of the same family, the same blood, with the same first associations and habits, have some means of enjoyment in their power,

which no subsequent connections can supply ...."[4] Relocation cases have highlighted the enduring value of the maintenance of sibling relationships. *See, e.g., Ferdinand v. Ferdinand,* 763 A.2d 820 (Pa.Super.2000). Sibling separation, in the instant case, is not justified in light of the fact that the record fails to disclose other advantages to relocation.

¶ 16 Moreover, relocation results in Michael, Jr. losing ease of access to all of his extended family. His grandparents, aunts, uncles, and cousins on both sides of his family reside in the Harrisburg area. Michael, Jr. expressed familial attachment to his cousins. *Id.* at 187, 199, 583 A.2d 434. The intangible benefits of interacting with extended family cannot be discounted. No extended family members reside in western Pennsylvania.

¶ 17 While relocation may enhance Mother's own personal and emotional happiness and well-being, our concern must be centered upon whether the move is in the child's best interests. Where a move across the state takes a child away from his other parent, and there are no other advantages to the move, we simply cannot endorse the decision to grant relocation. As Justice McDermott observed,

> Childhood is a small stretch of time in which events and changes can alter life to its last day.... Because we cannot undo the past[,] we must be more careful of the present, all too soon in the life of a child, to be past.

*Karis v. Karis,* 518 Pa. 601, 607, 544 A.2d 1328, 1332 (1988).

¶ 18 When a custodial parent seeks relocation and the non-custodial parent opposes the move, the custodial parent bears the burden of establishing

---

4. Jane Austen, *Mansfield Park,* 1814.

a significant improvement in the quality of life for that parent and child. Further, with respect to ... the potential advantages of the move, the trial court ... "must also assess other possible benefits of relocation" such as "a return to a network of family or friends ... educational opportunities, or ... an improved physical environment."

*Maurer v. Maurer,* 758 A.2d 711, 714 (Pa.Super.2000) (quoting *Gruber v. Gruber, supra* at 439). We can identify no significant benefits of relocation to the child in the instant case. The reality is that Michael, Jr. enjoyed a good quality of life, surrounded by loving parents, siblings, extended family, a sound school, a circle of friends, and extracurricular activities.

¶ 19 This case was not about a parent seeking a new or better job, obtaining better educational opportunities for the parent or child, improving living conditions or standard of living, gaining the support of relatives or increasing those contacts, or fleeing an unbearable or unhealthy relationship. Rather, this relocation had one goal, Mother's cohabitation with the man she intended to marry. That Mother seeks such love and companionship is understandable. However, that one fact, alone, is simply not enough to require a ten-year-old child to relinquish his parental and familial supports, the very relationships that will enrich and sustain him as he grows to adulthood.

¶ 20 We therefore vacate the July 1, 2005 order and remand for proceedings necessary to construct a custody order that permits Michael, Jr. to remain in the prior marital home jurisdiction.

¶ 21 Order vacated and remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.