**Maroney v. Maroney**

*Faith M. Lucchesi,* for plaintiff.
*Jennifer P. Bierly,* for defendant.

GRINE, *J.,* January 3, 2008—Presently before the court is a petition for modification of current custody order and request for relocation brought by Reba Michelle Maroney (Mother). Mother asks the court to allow her to move with her son Grayson Maroney back to her hometown of Denton, Texas. Craig Maroney (Father) opposes this move, as it would take Grayson several hours away from him and make it difficult for Father to visit Grayson on a regular basis. A hearing was held on

December 13, 2006. At the conclusion of the hearing, counsel was ordered to submit proposed findings of fact, proposed conclusions of law and briefs within 10 days. Both parties' counsel did so in a timely manner. The court is now ready to make a decision. For the following reasons, the court grants Mother's petition for modification of current custody order and request for relocation.

## FINDINGS OF FACT

(1) Mother and Father were married on February 14, 1998, in Denton, Texas.

(2) Grayson is 9 years old.

(3) Grayson currently attends The Nittany Christian School in State College, Centre County, Pennsylvania, where he is enrolled in the third grade.

(4) Mother was born and raised in Denton, Texas.

(5) Prior to moving to Pennsylvania with Mother and Grayson, Father had lived in Texas since he was 5 years old.

(6) Grayson was born in Denton, Texas.

(7) Mother, Father, and Grayson lived in Denton, Texas until August 2005, when Father obtained employment in State College, Centre County, Pennsylvania.

(8) Father represented to Mother and Grayson that his new employment would enable them to eventually return to Texas.

(9) Father has since changed employment again, and is currently working for Time Warner in Virginia.

(10) While he lived in Texas, Grayson attended Liberty Christian School.

(11) Mother has arranged for Grayson to begin the process of returning to Liberty Christian School upon her return to Denton.

(12) Mother anticipates finding comparable work in the area surrounding Denton.

(13) Mother plans to initially live with her parents in Denton, and then find a residence for her and Grayson shortly thereafter.

## CONCLUSIONS OF LAW

(1) "The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." This determination is to be made on a case-by-case basis. *Speck v. Spadafore,* 895 A.2d 606, 609 (Pa. Super. 2006) (quoting *Swope v. Swope,* 455 Pa. Super. 587, 591, 689 A.2d 264, 265 (1997), citing *Myers v. DiDomenico,* 441 Pa. Super. 341, 345, 657 A.2d 956, 957 (1995).

(2) In a custody dispute, a trial court must determine what arrangement is in the best interest of the child, conducting a searching inquiry into all facts and circumstances having an impact on the child's physical, intellectual, moral, and spiritual well-being. *Jackson v. Beck,* 858 A.2d 1250, 1252-53 (Pa. Super. 2004).

(3) A child's best interest is determined on a case-by-case basis. *Saintz v. Rinker,* 902 A.2d 509, 512 (Pa. Super 2006).

(4) "When a custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges move, custodial parent has the initial burden of showing that move is likely to significantly improve quality of life for that parent and children. In addition, each parent has burden of establishing the integrity of his or her motives in either desiring to move or seeking to prevent it. . . . The court must then consider . . . the feasibility of creating substitute visitation arrangements to ensure a continuing, meaningful relationship between the children and the non-custodial parent." *Gruber v. Gruber,* 400 Pa. Super. 174, 186, 583 A.2d 434, 440 (1990).

(5) The best interests of children cannot always be separated from the interests of their custodial parents, as the custodial parent's mental well-being affects his or her ability to parent their child. *Thomas v. Thomas,* 739 A.2d 206, 214 (Pa. Super. 1999).

(6) Determinations regarding child custody and relocation must be made on a case-by-case basis. *Zoccole v. Zoccole,* 751 A.2d 248, 251 (Pa. Super. 2000).

(7) "When faced with the decision whether to permit relocation, a trial court must consider these factors: (1) The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent; (2) The integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and (3) The availability of realistic,

substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the non-custodial parent." *Speck v. Spadafore,* 895 A.2d 606, 610 (Pa. Super. 2006) citing *White v. White,* 437 Pa. Super. 446, 451, 650 A.2d 110, 113 (1994) quoting *Gruber v. Gruber,* 400 Pa. Super. 174, 184-85, 583 A.2d 434, 439 (1990).

## DISCUSSION

"The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." This determination is to be made on a case-by-case basis. *Speck v. Spadafore,* 895 A.2d 606, 609 (Pa. Super. 2006) (quoting *Swope v. Swope,* 455 Pa. Super. 587, 591, 689 A.2d 264, 265 (1997), citing *Myers v. DiDomenico,* 441 Pa. Super. 341, 345, 657 A.2d 956, 957 (1995). When the child custody issue involves the relocation of a custodial parent, there are additional factors which must be addressed. "When faced with the decision whether to permit relocation, a trial court must consider these factors: (1) The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent; (2) The integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and (3) The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the non-

custodial parent." *Speck v. Spadafore,* 895 A.2d 606, 610 (Pa. Super. 2006), citing *White v. White,* 437 Pa. Super. 446, 451, 650 A.2d 110, 113 (1994), quoting *Gruber v. Gruber,* 400 Pa. Super. 174, 184-85, 583 A.2d 434, 439 (1990).

The first *Gruber* factor requires that the trial court weigh "[T]he potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children, and is not the result of a momentary whim on the part of the custodial parent." *Speck, supra,* 895 A.2d at 610. Here, it is obvious that the move which Mother wishes to make will result in several advantages to Grayson. He will be closer to his extended family of both Mother and Father, and will return to a familiar place where he still has friends. Additionally, he will most likely be able to return to the Liberty Christian School, the school he attended while he lived in Denton, Texas. Mother will benefit by being close to her family and friends. The best interests of children cannot always be separated from the interests of their custodial parents, as the custodial parent's mental well-being affects his or her ability to parent their child. *Thomas v. Thomas,* 739 A.2d 206, 214 (Pa. Super. 1999). Mother has very few ties to the State College area, and only moved here to accommodate Father's new job. Father no longer is employed in the State College area. Mother hopes to find a comparable job in the Denton area, and has already begun her job search. Additionally, there is no argument that this move is a "momentary whim" on Mother's part. She will be returning to her hometown, a place where she intended to return to at the

time she moved to Centre County. The court is satisfied that it is in the best interest of Grayson to return to Denton, Texas with Mother.

The second *Gruber* factor requires that the trial court consider "[t]he integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it." *Speck, supra,* 895 A.2d at 610. The court has no doubt that the motives of both parties in this case are pure. Mother simply wishes to return to the place she feels is her and Grayson's home. Father wishes to keep Grayson close so he can continue to have regular periods of partial custody with Grayson. Father no longer spends a significant amount of time in State College. This makes the decision even more difficult. The court does not see the need to force Mother to stay in a town to which she has no connections; especially given that Father no longer has any ties to this area either. It was made clear to the court that at all times Mother believed that her family would return to Denton, and that Father made these representations to her. It is unfair to now penalize Mother and Grayson for attempting to help Father have a more satisfying career and to try to keep her marriage together by moving away from her home. Both Mother and Grayson wish to have a close relationship with their extended family in Denton, and should be allowed to do so.

The third and final *Gruber* factor requires that the trial court analyze "[t]he availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the non-custodial parent." *Speck, supra,* 895 A.2d at 610. While the court is aware that Father will have

less time with Grayson when Grayson moves to Denton, it is apparent that it is still in Grayson's best interest to make the move. Father currently is working in Virginia, and no longer sees Grayson as regularly as the original custody agreement allowed. Father has taken over a lot of responsibility at his current job, which has led to him working longer hours at the office in Virginia, and allowing for less telecommuting than he had originally told Mother he would be doing. Mother's hope is that Father will move back to Texas, where his family also resides, in order to be closer to Grayson. It is obvious that it is Mother's wish to have Father continue to have a close relationship with Grayson. The court does not expect that Father will just leave his current job and move back to Texas. The court does, however, believe that it was Father's decision to leave a workplace which told him it would send him back to the area which he knew his wife and child wanted to return to. Additionally, the court is ordering that Grayson will spend a significant amount of time with Father during his breaks from school, so Father will still be able to have a meaningful relationship with Grayson.

## ORDER

And now January 3, 2008, after a hearing on the matter and a review of the parties' findings of fact and conclusions of law, it is hereby ordered and decreed as follows:

(1) Mother and Father shall share joint legal custody of their minor child, Grayson Connor Maroney.

(2) Mother's petition for modification of current custody order and request for relocation is granted. Father's cross petition for primary custody is denied.

(3) Mother shall be permitted to relocate with Grayson to Denton, Texas. Accordingly, Mother shall have primary physical custody of the parties' minor child subject to Father's periods of partial physical custody as follows:

(i) Father shall have custody of Grayson from one week after school concludes for the summer until one week before school commences in the fall;

(ii) Father shall have custody of Grayson during Grayson's spring break from school;

(iii) Father shall have custody of Grayson over the Christmas holiday commencing at 2 p.m. on December 25 and concluding at 6 p.m. the day before school commences after the Christmas holiday;

(iv) Father may visit Grayson in Denton, Texas at any and all times as mutually agreed upon by the parties.

(4) Father shall provide for all transportation necessary to effectuate his periods of partial physical custody.

(5) Mother may visit with Grayson while he is in Father's custody at times as mutually agreed upon by the parties.

(6) Both parents shall have full access to all relevant medical, dental, psychological, educational and religious records of the child. Each parent may obtain such records directly from the provider without the other parent's consent. Parents shall provide each other with any records not easily obtainable by the other parent. Any school

district in which the child attends school shall provide both parents identical information. The custodial parent shall provide to the non-custodial parent on a weekly basis, all school papers, projects, or other products of Grayson's development, so as to allow a sharing of those items as fully possible.

(7) In implementing the provisions of this order, both parents shall be flexible and act in Grayson's best interest. Both parents shall use their best efforts in presenting a united front to Grayson and in shielding Grayson from an awareness of his parents' discussions and differences. Both parents shall use their best efforts to insure that their spouses, significant others and extended families cooperate in carrying out in the intent and spirit of this order. Each party shall encourage the child in the exercise of the other parent's custody rights and stimulate the child to maintain a positive and healthy relationship with the other parent and the other parent's family. Each party shall cooperate in giving the other reasonable notice of their respective scheduling as it may affect visitation and non-visitation to facilitate each of the parties' individual planning and scheduling.

(8) Both parents shall be notified of, and invited to, major events in the child's life, including, but not limited to; graduations, awards presentations, performances by the child, academic and athletic competition in which Grayson participates, and similar extracurricular activities.

(9) Each parent shall promptly notify the other of any serious accident or illness or any legal or educational emergency involving Grayson while in that parent's

custody. If the child is taking medications, that medication or a prescription for the medication shall be made available to each parent. The non-custodial parent shall be provided copies of medical assistance and insurance documents.

(10) Each parent must notify the other of any changes of residential or work address or telephone number.

(11) The parent who does not have custody shall be entitled to reasonable telephone contact with Grayson. Such contact shall not be monitored, or interrupted, by the custodial parent. In the event of long distance calls, the parents shall agree on specific times when Grayson will be available to receive calls.