J-S37018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| A.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.G. | : | No. 1843 EDA 2024 |

Appeal from the Order Entered July 2, 2024
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2024-60020-C

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 30, 2024**

In this child custody action, A.R. (Appellant) appeals from the order granting (1) S.G. (Mother) primary physical custody of the parties' son, W.R. (born in 2021 (Child or the Child)), subject to Appellant's periods of partial custody; and (2) Mother's request to relocate with Child to Florida.  Upon careful examination, we affirm.

The trial court made the following factual findings in its opinion:

> Mother and [Appellant] are the natural parents to Child…. Mother and [Appellant] never married but lived together for three years.  They separated on January 2, 2024, when Mother, her daughter from a previous relationship (L.C.), and Child fled [Appellant's] domestic abuse.  Mother now resides in Florida with L.C. and Child.
>
> [Appellant] is 29 years old and in good health.  He is employed full-time as a union welder in the greater Philadelphia area. … [Appellant] has been convicted on two [driving under the influence of alcohol (DUI)] charges, most notably when his driver's license was suspended, and he was incarcerated in the

Commonwealth. Upon release, [Appellant] was placed on parole and was prohibited from driving. Besides the DUIs, [Appellant] has also been convicted [of] harassment….

Mother is 31 years old and in good health. She is employed full-time as a remote HVAC schedule coordinator. Mother has [a 12-year-old] daughter, L.C., from a relationship prior to that with [Appellant]. Mother grew up with her family in California. She spent a few years living with L.C. in Georgia before moving to Pennsylvania with [Appellant]. Now, Mother, Child and L.C. live in a single-family, three-bedroom home in Florida.

Child is two years [old], in good health and of average maturity and intellect for his age. For a brief period, Child required speech therapy services[,] which were provided by the Bucks County Intermediate Unit. Upon reevaluation by the Head Start program, Child no longer requires speech therapy.

L.C. … is not subject to this custody dispute. [Appellant] has no biological relationship with L.C. and does not assert any custodial rights over her.

By way of background, the parties met through social media in December of 2019. At that time, Mother lived in Georgia and [Appellant] lived in Pennsylvania. Due to the terms of [Appellant's] incarceration and parole, the parties had limited in-person contact until August of 2020[,] when Mother and [Appellant obtained] a home together in [Appellant's] hometown, Perkasie, Pennsylvania.

Once Mother and [Appellant] moved in together, their relationship took a turn for the worse. … Mother stated that [Appellant] would physically, sexually, emotionally and financially abuse her.

This includes physical abuse suffered by [Mother] while she was pregnant with Child, an incident where [Appellant] placed Mother in a chokehold and slammed her onto the ground, several instances where [Appellant] restrained Mother, several instances where [Appellant] choked Mother, and several instances where [Appellant] aggressively raped Mother. Beyond physical abuse, [Appellant] would verbally abuse Mother by reprimanding and insulting her. …

- 2 -

On January 2, 2024, Mother [] fled [Appellant's] domestic violence and [moved] to Florida. [Mother] left a note at the house [she] and [Appellant] lived in and fled with [] Child and L.C.

Trial Court Opinion, 7/30/24, at 1-3 (some capitalization modified).

On January 3, 2024, Appellant filed an emergency custody complaint pursuant to the Child Custody Act (the Act), 23 Pa.C.S.A. §§ 5321-5340. Appellant requested "an emergency hearing granting [him] sole legal and physical custody" of Child. Custody Complaint, 1/3/24, ¶ 21. Notably, Appellant emphasized that Mother gave him no notice of her relocation with Child. *Id.* ¶ 15 (Appellant stating he "does not know where [Mother] and the [C]hild are and believe[s] they … have left the Commonwealth of Pennsylvania.").

The trial court detailed what next transpired:

[On January 22, 2024, t]he parties appeared … for a hearing on the custody of the Child.[1] [Appellant] appeared in person and Mother appeared via Webex. After a full day hearing, the matter was continued, and [the trial court] entered an interim schedule[,] where the parents had joint legal and physical custody of the Child. The physical custody arrangement was one week on and one week off. [The trial court] further ordered Mother and Child to be physically present at the next hearing date.

On March 22, 2024, [the trial court] heard more testimony…. [A consolidated PFA/custody hearing took place on March 27, 2024, after which the trial court] … entered a revised interim order[,] which provided that the parties must comply with a two weeks on then two weeks off custody schedule[,] and

_____

[1] Also on January 22, 2024, Mother filed a petition for protection from Appellant's alleged abuse, pursuant to the Protection from Abuse (PFA) Act, 23 Pa.C.S.A. §§ 6101-6122. The trial court consolidated the PFA and custody actions for purposes of the hearing.

modified the [physical custody exchange] location to Elkton, North Carolina.

On June 5 and 6, 2024, [the trial court] held two more days of testimony regarding the custody of Child and Mother's PFA petition.

At the hearings[, the trial court[2]] heard testimony from Mother; [Appellant]; R[.R.], [Appellant's] father; K[.R.], [Appellant's] mother [(paternal grandmother)]; Pennridge Regional Police Officer [James] Brown[e (Officer Browne)]; Karen Kalinowsky, the parties' neighbor; Katlyn Baker, a family acquaintance[;] and Brandan Mascaro, [Appellant's] friend. Also present were members of [Appellant's extended] family….

Trial Court Opinion, 7/30/24, at 3-4 (footnotes added; some capitalization modified).

At the conclusion of the June 6, 2024, hearing, the trial court granted Mother's PFA petition and entered a two-year, final PFA order protecting Mother from Appellant.[3] **See** N.T., 6/6/24, at 2. The court found "that the testimony of Mother is credible and any conflicting testimony by [Appellant] regarding abuse is not credible." **Id.** The trial court next addressed on the record all of the requisite statutory factors implicated in custody/relocation determinations (discussed below). **See id.** at 2-8. The court announced its decision: "Based on all of the factors …[,] I'm going to allow the relocation." **Id.** at 8.

_____

[2] The Honorable James M. McMaster presided over the proceedings. Judge McMaster also authored the Pa.R.A.P. 1925(a) opinion regarding the custody dispute in this case.

[3] The instant appeal does not implicate the PFA order.

- 4 -

On July 2, 2024, the trial court entered a final order (custody order) awarding Mother primary physical custody of Child and permitting her to relocate with Child. Order, 7/2/24, ¶ 3. The custody order granted Appellant partial physical custody of Child, including two months in the summers, as well as certain holidays. *Id.* ¶¶ 4, 7. The custody order dictated the parties would share legal custody of Child. *Id.* ¶ 2. Finally, the custody order provided all custody exchanges would occur at a public place located in North Carolina (if air travel was not utilized). *Id.* ¶ 6.

Appellant timely filed a notice of appeal on July 5, 2024,[4] simultaneously with a concise statement of errors, as required by Pa.R.A.P. 1925(a)(2)(i). The trial court issued a thorough Pa.R.A.P. 1925(a) opinion on July 30, 2024.

Appellant presents two issues for our review:

I. Did the trial court err in permitting the relocation of … [Child] to the State of Florida when []Mother secretly took the Child from the parties' home in Bucks County …, with no notice to Appellant[] of the intention to relocate, nor any means by which to contact the [] Child, nor with any plans by []Mother to allow contact between Appellant and [C]hild[,] until such time as [Mother] was compelled to do so by th[e trial] court[,] after [Mother] had already moved to an undisclosed location in the State of Florida? Did the trial court further err by ignoring uncontroverted evidence that [Mother] has, in the past, been willing to move [L.C.] from one state to another[,] and where [Mother] does not appear to have encouraged a relationship between [L.C.] and [L.C.'s] father?

---

[4] Appellant filed a separate appeal of the final PFA order (docketed in this Court at 1842 EDA 2024). Appellant, however, subsequently discontinued that appeal.

- 5 -

II. Did the trial court commit a manifest abuse of discretion in its application of the relocation factors contained in 23 Pa.C.S.A. § 5337, with the trial court's focus being almost completely reliant upon its finding of non-physical abuse by Appellant[] toward []Mother only (not as to the Child)[,] and while ignoring the other factors involving the Child's best interests as to both relocation and custody?

Appellant's Brief at 6 (some capitalization modified). We address Appellant's interrelated issues together.

In child custody cases,

[w]e review the trial court's custody order for an abuse of discretion. We defer to the trial court's factual findings that are supported by the record and its credibility determinations. However, we are not bound by the trial court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings.

*M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa. Super. 2017) (internal citations and quotation marks omitted); *see also Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) (stating an abuse of discretion "will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record." (citation omitted)).

Significantly, this Court

consistently ha[s] held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing

witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citing ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)). Where a custody matter presents an issue implicating "credibility and weight of the evidence, we defer to the findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses." ***Andrews v. Andrews***, 601 A.2d 352, 353 (Pa. Super. 1991) (citation omitted); ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (same).

When reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***M.G.***, 155 A.3d at 1091 (citation omitted).

Section 5328(a) of the Act provides a trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors … which affect the safety of the child," including the following factors:[5]

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

---

[5] We hereinafter collectively refer to the Section 5328(a) factors as "the custody factors."

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party[,] and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16); *see also* *S.S. v. K.F*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (stating if a "proposed relocation will result in a change in custody, the court must [] consider the custody factors in Section 5328(a)." (citing *A.V.*, 87 A.3d at 822-23)). "**All** of the [custody] factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).[6]

In a custody case where a party has petitioned to relocate with a child, Section 5337(h) of the Act requires the trial court to additionally "consider the following factors, giving weighted consideration to those factors which affect the safety of the child:"[7]

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with

---

[6] We are also mindful that "[p]rior to the formation of a custodial order, the parents stand on equal footing and the only burden carried by either of them is to establish what is in the best interest of the child." *J.R.M.*, 33 A.3d at 650 (citation and brackets omitted); *see also* 23 Pa.C.S.A. § 5327(a) ("In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent."); *id.* § 5328(b) (in making any custody determination, there shall be no preference based upon gender).

[7] We hereinafter collectively refer to the Section 5337(h) factors as "the relocation factors." "Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." *S.S.*, 189 A.3d at 1098 (citation omitted).

the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5328(h). A trial court must consider all of the relocation factors. *E.D. v. M.P.*, 33 A.3d 73, 81 (Pa. Super. 2011); *see also S.S.*, 189 A.3d at 1098 ("A court should avoid dissociating the issue of primary custody from the issue of relocation, and should instead decide the two issues together

under a single umbrella of best interests of the children." (citation and quotation marks omitted)).

Notably, Section 5328 further provides that the "party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)." 23 Pa.C.S.A. § 5328(i)(1); *see also id.* § 5328(i)(2) ("Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation."). Trial courts are prohibited from conferring "any presumption in favor of the relocation," if the party has relocated a child's residence prior to the hearing. *Id.* § 5337(l).

Finally, Section 5323(d) of the Act provides that a trial court "shall delineate the reasons for its decision" in making any custody award. *Id.* § 5323(d). "In expressing the reasons for its decision, 'there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.'" *A.V.*, 87 A.3d at 823 (quoting *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013)). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." *Id.*

Instantly, Appellant claims the trial court abused its discretion in permitting Mother to relocate with Child and awarding her primary physical custody, as (a) it was not in Child's best interests; and (b) court improperly

"gave lip service to many of the [statutory] factors that guide custody and relocation determinations." Appellant's Brief at 18-19; *see also id.* at 49 ("[C]hild has an established home, family, and playmates in Pennsylvania. The best interests of [] Child are served by disallowing [Mother's] relocation."). According to Appellant, "at no time did [Mother], the party with the burden of proof, demonstrate this move was for the benefit of Child. This relocation was not necessary…." *Id.* at 47; *see also* 23 Pa.C.S.A. § 5328(i)(1), *supra*. Appellant contends, "[C]hild's physical, intellectual, moral, and spiritual wellbeing is better served by Appellant unless [Mother] decides to move back to Pennsylvania. If [M]other returns, the parties should share legal and physical custody…." *Id.* at 37.

> Appellant argues the trial court erred
>
> when it accepted [Mother's] unproven testimony that she was a victim of domestic abuse. The trial court further erred when it based its custody decision almost fully upon that unfounded abuse determination.

*Id.* at 15. Appellant contends, "Contrary to [Mother's] claims in her PFA petition that there had been some sort of physical abuse, [Mother] denied both sexual and physical abuse when she first spoke to the police." *Id.* at 28 (citing N.T., 1/22/24, at 29 (Officer Browne's testimony that Mother initially did not mention physical or sexual abuse, instead "describ[ing Appellant] as verbally, emotionally and financially abusive towards [Mother].")). Appellant claims, "Assuming *arguendo* that there was abuse between [Appellant] and Mother, there were numerous options available to Mother that did not involve

removing [] Child from the majority of his family structure." *Id.* at 40 (some capitalization modified). Appellant further asserts the trial court improperly failed to consider Mother's (a) "prior instability of housing and location";[8] (b) giving Appellant no prior notice of her relocation; and (c) "lack of a support system at her current location." *Id.* at 19-20, 32.

Appellant repeatedly emphasizes that Mother, prior to moving to Florida with Child, never filed a notice of relocation, as required by 23 Pa.C.S.A. § 5337(c). *See id.* at 19-20, 37-40. Section 5337(c) provides, *inter alia*, the following:

> **(1)** The party proposing the relocation **shall** notify every other individual who has custody rights to the child.
>
> **(2)** Notice, sent by certified mail, return receipt requested, shall be given no later than:
>
>> **(i)** the 60th day before the date of the proposed relocation; or
>>
>> **(ii)** the tenth day after the date that the individual knows of the relocation, if:
>>
>>> **(A)** the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice; and

---

[8] According to Appellant,

> [Mother] has lived a transient lifestyle for the past five years and continues to move based upon her own whims rather than to a place where she had employment or a place to live or where she had identified schools for her children.

Appellant's Brief at 32.

- 13 -

**(B)** it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice.

23 Pa.C.S.A. § 5337(c)(1)-(2) (emphasis added); *see also* Appellant's Brief at 38 (emphasizing the mandatory language of subsection 5337(c)(1)).[9]

Here, Appellant contends, "the trial court incorrectly applied both the relocation factors and the custody factors by shifting the burden of proving the [C]hild's best interests from [Mother], who was the relocating party, to

_____

[9] However, Section 5337 further provides as follows:

**(j)** *Failure to provide reasonable notice.* — The court may consider a failure to provide reasonable notice of a proposed relocation as:

**(1)** a factor in making a determination regarding the relocation;

**(2)** a factor in determining whether custody rights should be modified;

**(3)** a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;

**(4)** sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and

**(5)** a ground for contempt and the imposition of sanctions against the party proposing the relocation.

**(k)** *Mitigation.* **— Any consideration of a failure to provide reasonable notice under subsection (i) shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse.**

23 Pa.C.S.A. § 5337(j)-(k) (emphasis added).

Appellant."  Appellant's Brief at 40; *see also* 23 Pa.C.S.A. § 5328(i)(1), *supra* (detailing burden of proof).  Appellant points out that "at no time … did [Mother] ask the court for permission to relocate, nor did she notify Appellant of her intention to relocate until well after Appellant had filed his custody petition.  Providing notice of relocation is not optional."  Appellant's Brief at 37; *see also* 23 Pa.C.S.A. § 5328(c)(1), *supra*.  "[Mother] did not file a request to relocate, did not file notice of where the [C]hild would be attending school, and has not provided medical information to Appellant."  Appellant's Brief at 24.

Mother counters the trial court did not abuse its discretion in granting her permission to relocate and awarding her primary physical custody of Child, as both served Child's best interests.  *See* Mother's Brief at 23-24, 39.  Mother concedes that there is

> no dispute that Mother failed to commence her relocation action by sending a [Section] 5337[](c) notice of relocation to [Appellant].  However, Mother argued[,] and the trial court agreed, that her act of failing to give notice was mitigated by the imminent threat of physical abuse by [Appellant].

*Id.* at 17; *see also* 23 Pa.C.S.A. § 5337(k), *supra*.

> Mother emphasizes that

> the trial court heard extensive testimony from the parties and [Appellant's] witnesses.  The [c]ourt found Mother's testimony to be credible.  As stated in the trial court's opinion, Mother suffered extensive physical, sexual, emotional and financial abuse by [Appellant].

*Id.* at 19 (citing Trial Court Opinion, 7/30/24, at 2).

Mother points out that this Court may not disturb a trial court's credibility determinations that are supported by the record. **Id.** at 20-21; **see also M.G.**, 155 A.3d at 1091, *supra*. According to Mother, Appellant

> repeatedly requests that this Court ignore its scope and standard of review. The trial court considered the testimony of Mother regarding the abuse she suffered by [Appellant], as well as the evasive responses of [Appellant] and his parents about the abuse, and ultimately concluded that Mother was credible. [Appellant] is essentially asking this Court to disregard the credibility and factual findings of the trial court and to make independent factual determinations.

Mother's Brief at 23.

Mother concludes,

> [i]t is in the best interest of Child to be in the primary care of Mother in Florida where she, Child and his sister[,] L.C.[,] can be safe and flourish; and, where Child can also, with the custody schedule set forth by the trial court, continue to spend substantial uninterrupted time throughout the year with [Appellant] and his family.

**Id.** at 39.

We will address, *seriatim*, the trial court's consideration of each of the custody factors, followed by the relocation factors.

## CUSTODY FACTORS

### (1) Which party is more likely to encourage and permit contact between the Child and another party.

The trial court found this factor is neutral. Trial Court Opinion, 7/30/24, at 15. The court stated that the testimony made "clear to [the trial court] that both parties are willing" to permit contact between Child and his parent,

"although the relocation issue made that more difficult." *Id.*; *see also* N.T., 6/6/24, at 2.

**(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the Child or an abused party, and which party can better provide adequate physical safeguards and supervision of the Child.**

The trial court found this factor "clearly favored Mother." Trial Court Opinion, 7/30/24, at 15. The court stated it "found that physical abuse did take place and that Mother was in constant, reasonable and imminent fear of her safety." *Id.*; *see also* N.T., 6/6/24, at 2. The court elaborated on the parties' conflicting testimony concerning Mother's abuse allegations:

> Countless times, when asked about physical abuse suffered by Mother at the hand of [Appellant], rather than affirm or deny, [Appellant] and his family [members] would testify that they did not "recall" or "remember" a time where [Appellant] was physically abusive or where Mother begged [Appellant's] family to help stop the abuse. N.T.[,] 1/22/24, p. 114 l. 19, p. 116 l. 25, p. 117 l. 17, 19, 25, p. 120 l. 7, p. 191 l. 18-22; N.T.[,] 3/22/24, p. 63 l. 12-13, p. 65 l. 5-7, p. 83 l. 20, p. 87 l. 19-2, p. 108 l. 19-25; N.T.[,] 6/5/24, p. 64 l. 18-20. Ultimately, [the trial court] found the testimony of Mother to be credible and any conflicting testimony by [Appellant] and his family to be [i]ncredible. …
>
> Alternatively, while Mother needed an occasional reminder to stay on topic when answering questions, she did not employ the same evasive techniques as [Appellant] and his family. Mother testified to an entire history of physical abuse she suffered from [Appellant,] and provided … traumatic details of many incidents.

Trial Court Opinion, 7/30/24, at 4-5.

**(3) The parental duties performed by each party on behalf of the Child.**

The trial court found this factor favors Mother. *Id.* at 15. The court reasoned:

> Mother was and has been the primary caregiver for Child. [The trial court] do[es] note that [Appellant] has performed and can perform parental duties, but he does not provide care to the same level as Mother, and he regularly passes off parental duties onto his own parents.

*Id.*; *see also* N.T., 6/6/24, at 3.

> The trial court elaborated:
>
> [Appellant] urged th[e trial] court to believe that he is a responsible, available and loving parent. Yet, [Appellant] has inconsistently been available to accept custody since [the time of the court's] interim order entered on January 22, 2024. Truthfully, and sadly, [Appellant] cannot handle being a single parent. [The trial court] heard and know[s] that [Appellant] loves Child endlessly. [The court] heard and know[s] that [Appellant's] family loves Child endlessly. However, [Appellant] has not been consistently available to comply with a 50/50 physical custody schedule, let alone being the primary custodian. [Appellant] has his family watch and take care of Child every day that [Appellant] is supposed to be the custodian. N.T.[,] 1/22/24, p. 91 l. 10-24, p. 93 l. 22-25, p. 94 l. 1-15.
>
> Differently, Mother is a responsible, available and loving parent. Mother works remote full-time. Mother secured schooling for Child to attend[,] which stimulate[s] his social and intellectual development, instead of Child being checked in on while his paternal grandmother works. Mother adjusts her work schedule to take care of Child when he has an emergency.

Trial Court Opinion, 7/30/24, at 5 (some capitalization modified).

**(4) The need for stability and continuity in the Child's education, family life and community life.**

The trial court found this factor posed "a serious problem in this case because of Mother's relocation. Therefore, [the court] explained [its] analysis

of that factor [] with the relocation factors," *infra*.  **Id.** (some capitalization modified); **see also** N.T., 6/6/24, at 3.

**(5) The availability of extended family.**

The trial court found this factor favors Appellant.  Trial Court Opinion, 7/30/24, at 16.  The court reasoned:

> [Appellant] has his parents, grandparents, brother, and other relatives near him.  Mother, other than her other child, does not have any other extended family that has been involved with Child.  Th[e trial c]ourt notes and admires how supportive [Appellant's] family is of him.  But that does not change the fact that [Appellant] relays massive custodial responsibilities onto his own parents when Child is supposed to be with him.

**Id.**; **see also** N.T., 6/6/24, at 3.

**(6) Child's sibling relationships.**

The trial court found this factor "clearly favored Mother."  Trial Court Opinion, 7/30/24, at 16.  The court observed: "Child has a half-sister, L.C., who … had and continues to have a great relationship with Child.  L.C. and Child play together[;] they have lived together for all of Child's life[;] they love each other."  **Id.**; **see also** N.T., 6/6/24, at 3-4; **Saintz**, 902 A.2d at 513 ("[A]bsent compelling reasons to the contrary, the policy in Pennsylvania is to permit siblings, including half-siblings, to be raised together.").

**(7) The well-reasoned preference of the Child, based on the Child's maturity and judgment.**

The trial court found Child was unable to express a reasoned preference, "[g]iven that Child is just a toddler[.]"  Trial Court Opinion, 7/30/24, at 16.

**(8) The attempts of a parent to turn the Child against the other parent.**

- 19 -

The trial court found this factor is neutral.  Trial Court Opinion, 7/30/24, at 16.  The court elaborated: "Despite the abuse suffered by Mother, [the court] did not find that there was any attempt by either parent to turn Child against them, and [the court] did not find that any reasonable safety measures were necessary to protect Child."  *Id.*; *see also* N.T., 6/6/24, at 4.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the Child adequate for the Child's emotional needs.**

The trial court found this factor is neutral, without elaboration.  Trial Court Opinion, 7/30/24, at 16; *see also* N.T., 6/6/24, at 4.

**(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Child.**

The trial court found this factor is neutral.  Trial Court Opinion, 7/30/24, at 16; *see also* N.T., 6/6/24, at 4.

**(11) The proximity of the residences of the parties.**

The trial court found this factor posed "a major problem" because of Mother's relocation.  Trial Court Opinion, 7/30/24, at 16; *see also* N.T., 6/6/24, at 4-5.  Accordingly, the trial court explained it addressed this factor in connection with the relocation factors, *infra*.  Trial Court Opinion, 7/30/24, at 16.

**(12) Each party's availability to care for the Child or ability to make appropriate child-care arrangements.**

The trial court found this factor is neutral.  Trial Court Opinion, 7/30/24, at 17.  The court elaborated:

Mother was able to secure remote employment[,] which gives her great flexibility to take care of Child[,] and enrolled Child in Head Start. [Appellant] leans heavily on his parents for childcare during the work week. N.T.[,] 1/22/24, p. 91 l. 10-24, p. 93 l. 22-25, p. 94 l. 1-15. Both are appropriate means of childcare.

Trial Court Opinion, 7/30/24, at 17; *see also* N.T., 6/6/24, at 5 (trial court finding, "both parents are able to either care for the [C]hild or make appropriate childcare arrangements.").

**(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.**

The trial court found this factor favored Mother. Trial Court Opinion, 7/30/24, at 17. The court elaborated:

Given [Appellant's] history of physical and verbal abuse towards Mother, including when [Appellant] has referred to her as a "c***," a "f****** b****," and a "w****," this factor favored Mother. N.T.[,] 1/22/24, p. 241 l. 21-22, N.T.[,] 6/5/24, p. 96 l. 14.

Trial Court Opinion, 7/30/24, at 17; *see also* N.T., 6/6/24, at 5 (trial court finding there "[c]learly [was] an issue" concerning conflict between the parties, but that they "should be able to accommodate reasonable communication with each other.").

**(14) The history of drug or alcohol abuse of a party or member of a party's household.**

The trial court found this factor is neutral. Trial Court Opinion, 7/30/24, at 17. The court noted, however, that Appellant "has a history involving DUI convictions and lots of overnight drinking ventures[. Nevertheless, the trial court] did not find that this factor has interfered or will interfere with

[Appellant's] ability to properly care for Child." ***Id.***; ***see also id.*** at 2 ("Through testimony, it became clear to [the trial court] that [Appellant] has not come to terms with the fact that he overconsumes alcohol."); N.T., 6/6/24, at 5.

## (15) The mental and physical condition of a party or member of a party's household.

The trial court found this factor is neutral. Trial Court Opinion, 7/30/24, at 17 (stating the court "did not find that either party deals with any mental or physical conditions that would prevent them from properly caring for Child."); ***see also*** N.T., 6/6/24, at 5.

## (16) Any other relevant factor.

The trial court found that no other factors were relevant. Trial Court Opinion, 7/30/24, at 17; ***see also*** N.T., 6/6/24, at 5.

## RELOCATION FACTORS

## (1) The nature, quality, extent of involvement and duration of the Child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the Child's life.

The trial court found this factor is "relatively neutral." Trial Court Opinion, 7/30/24, at 18. The court reasoned:

> Clearly[,] Child has a great relationship with both parents. Both parents testified to countless positive moments they have shared with Child. Child and L.C. also share a loving, sibling bond. They watch T.V. together, play together, and L.C. nurtures Child appropriately for her age. Child also has a good relationship with [Appellant's] family, who[] provide childcare when [Appellant] is supposed to be the custodian.

*Id.*; *see also* N.T., 6/6/24, at 6.

**(2) The age, developmental stage, needs of the Child and the likely impact the relocation will have on the Child's physical, educational and emotional development.**

The trial court found this factor favored Mother.  Trial Court Opinion,

7/30/24, at 18-19.  The court

> found that Mother has been and is more able to take care of [the developmental] needs for Child.  Moreover, since moving, Child started Head Start, a structured educational and socialization program.  … Child attends a structured program with other children who are of the same age and maturity level.  And Child no longer overhears or witnesses [Appellant] abuse Mother.  N.T.[,] 6/5/24, p. 96 l. 11-16, p. 127 l. 9-13, p. 147 l. 25 — p. 148 l. 2.  Since the move, Child lives in a calmer environment where his intellectual and emotional skills may flourish.  Th[e trial c]ourt also found that the impact of relocation will not interfere with [Appellant's] ability to have a good relationship with Child.  [**See** N.T., 6/6/24, at 6.  Appellant] and Child will still enjoy extended periods of time[,] where [Appellant] is the custodian[.  P]latforms such as video chat will facilitate communication between them.

Trial Court Opinion, 7/30/24, at 18-19.

**(3) The feasibility of preserving the relationship between the nonrelocating party and the Child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The trial court found that this factor is neutral.  *Id.* at 19.  The court

observed the

> distance that Mother wanted to relocate was a significant factor in this case.  Yet, the parties have been able to work through an arrangement that allowed Child to have significant contact with each parent thus far.  So, it will be feasible to preserve each parent-child relationship with the relocation.

*Id.* at 19; *see also* N.T., 6/6/24, at 7 (trial court finding, "I think … it is feasible to preserve [Child's] relationship [with both parents] if we allow the relocation to take place.").

**(4) The Child's preference, taking into consideration the age and maturity of the Child.**

Given Child's young age, the trial court stated, "we don't have a child preference in this case." *See* N.T., 6/6/24, at 7.

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the Child and the other party.**

The trial court found this factor is neutral. Trial Court Opinion, 7/30/24, at 19. The court stated it "did not find that there has been any effort to thwart the relationship of Child and either parent. Rather, Mother's relocation was an effort to remove herself from an abusive and dangerous situation." *Id.*; *see also* N.T., 6/6/24, at 7.

**(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation.**

The trial court found this factor favored Mother. Trial Court Opinion, 7/30/24, at 19. The court "found that the relocation has enhanced Mother's quality of life[,] since she was relieved from an abusive environment." *Id.*; *see also* N.T., 6/6/24, at 7-8.

**(7) Whether the relocation will enhance the general quality of life for the Child.**

The trial court found this factor is neutral. Trial Court Opinion, 7/30/24, at 20. However, the court "note[d] that [] Child no longer witnesses or

overhears [Appellant] abusing Mother[,] and that Child is now enrolled in Head Start. Both of which stabilize Child and allow him to nurture his social and intellectual skills." *Id.*; *see also* N.T., 6/6/24, at 7.

**(8) The reasons and motivation of each party for seeking or opposing the relocation.**

The trial court found this factor favored Mother. Trial Court Opinion, 7/30/24, at 20. The trial court stated it

> found that Mother sought relocation to remove herself from a physically abusive situation. Throughout four full days of testimony, [the court] heard that [Appellant] would choke, restrain, shove and forcibly rape Mother. Even though [Appellant] would threaten Mother's life if she ever terminated their relationship, [the court] did not find that [Appellant's] opposition [to relocation] was in any way wrongfully motivated. [*See* N.T., 6/6/24, at 8.] Rather, [Appellant's] purpose in opposing the relocation was to keep Child near him. …

Trial Court Opinion, 7/30/24, at 20.

**(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the Child or an abused party.**

The trial court found this factor favored Mother. *Id.* The court specifically

> found that there was a long and continuing pattern of physical abuse suffered by Mother at the hands of [Appellant]. Given [Appellant's] conduct and threats, had Mother not fled, she may not even be alive today. While [the trial court] did find at least one instance where [Appellant's] parenting style could be categorized as "tough," [the court] did not find that there was a past or continuing risk of harm to Child.

*Id.*; *see also* N.T., 6/6/24, at 8 (trial court "find[ing] that there was abuse and … that there is a continuing risk of harm not to the [C]hild but to Mother.").

**(10) Any other factor affecting the best interest of the Child.**

The trial court found that no other factors were relevant. Trial Court Opinion, 7/30/24, at 20; *see also* N.T., 6/6/24, at 8.

Upon review, the trial court's findings are supported in the record. We discern no error or abuse of the court's discretion in its (a) finding that Mother met her burden of establishing relocation is in Child's best interest; and (b) thorough consideration and weighing of the custody factors and relocation factors. *See* 23 Pa.C.S.A. § 5328(i)(1); *see also Ketterer*, 902 A.2d at 540 ("[**T**]**he discretion that a trial court employs in custody matters should be accorded the utmost respect**…." (emphasis added)). The record supports the trial court's conclusion: "While [Appellant] may disagree with [the court's] analysis, … ample consideration was given to the [custody] factors [and relocation factors] …, as required by the [Act]…." Trial Court Opinion, 7/30/24, at 21; *see also Ketterer*, 902 A.2d at 539 ("The fact that a move of a considerable distance will increase the cost and logistical problems of maintaining contact between the noncustodial parent and child will not necessarily preclude relocation when other factors militate in favor of it." (citing *Speck v. Spadafore*, 895 A.2d 606, 610 (Pa. Super. 2006)). Further, there is no merit to Appellant's claim that the trial court focused solely on his

abuse of Mother, to the exclusion of other relevant statutory factors. As detailed above, the trial court engaged in an exhaustive analysis of each of the relocation and custody factors.

We decline Appellant's invitation to disturb the trial court's credibility determinations (including its findings of Appellant's abuse of Mother), which are supported by the record and binding on this Court. *M.G.*, 155 A.3d at 1091; *see also* Trial Court Opinion, 7/30/24, at 21 (citing *A.V.*, 87 A.3d at 820, and correctly observing: "[T]rial courts are afforded a wealth of discretion in making custody decisions because they make the most informed determinations on credibility and weight of the evidence as they had the opportunity to observe the proceedings and demeanor of the witnesses.").

Finally, the trial court appropriately considered, pursuant to 23 Pa.C.S.A. § 5337(k), Appellant's abuse of Mother as a mitigating factor concerning Mother's lack of notice regarding her relocation with Child. *Id.* ("Any consideration of a failure to provide reasonable notice … **shall** be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse." (emphasis added)). In this regard, our unpublished memorandum in *Moyer v. Moyer*, 309 A.3d 1059, 809 MDA 2023 (Pa. Super. 2023) (unpublished memorandum),[10] is instructive.

---

[10] We consider *Moyer* for its persuasive value. *See* Pa.R.A.P. 126(b) (providing this Court's unpublished non-precedential memorandum decisions filed after May 1, 2019, may be cited for their persuasive value).

In ***Moyer***, the trial court (a) granted the mother's petition to relocate with her three minor children (the Children);[11] and (b) awarded mother primary physical custody and sole legal custody, over the objection of the Children's father (father). ***Id.*** (unpublished memorandum at 1). The trial court found that father was "abusive and threatening to both [m]other and the Children"; and (b) father had sexually assaulted mother. ***Id.*** (unpublished memorandum at 2) (citation and brackets omitted); ***see also id.*** (unpublished memorandum at 2-5) (detailing father's abuse).

Father appealed, claiming, *inter alia*, the trial court erred in granting mother's relocation request. ***Id.*** (unpublished memorandum at 7). Specifically, he argued the trial court (a) "failed to consider that [m]other relocated with the Children without [father's] consent or without giving notice"; and (b) "erred in its consideration of the relocation factors and focused solely on [f]ather's alleged abuse to the exclusion of any other factors." ***Id.*** (unpublished memorandum at 7-8) (footnote omitted).

This Court affirmed, concluding the trial court did not err in finding that mother met her burden of establishing relocation was in the Children's best interests. ***Id.*** (unpublished memorandum at 15-16). We stated as follows:

> The [trial] court did not consider father's alleged abuse of mother to the exclusion of all other factors, but rather found father lacked the ability to provide a safe environment in which the Children's

_____

[11] Like the instant case, mother relocated with the Children without first giving father notice or obtaining his consent. ***Moyer***, 309 A.3d 1059 (unpublished memorandum at 6).

- 28 -

needs will best be met. While father argues the relocation is not in the Children's best interest because of the disruption of leaving their community in Berks County, father points to no evidence supporting this point. Moreover, contrary to father's assertion, the court did consider that mother relocated without father's consent and without giving him proper notice. However, the court found this situation was mitigated by father's abuse of mother.

*Id.* (unpublished memorandum at 16) (paragraph break omitted; some capitalization modified); *see also id.* at 15 ("Although the court did not give each relocation and custody factor equal weight, it was not required to do so.").

Instantly, like the situation in *Moyer*, the trial court properly "did consider that Mother relocated without [Appellant's] consent and without giving him proper notice. However, the court found this situation was mitigated by [Appellant's] abuse of Mother." *Id.* (unpublished memorandum at 16). Specifically, the trial court opined as follows:

[F]ailure to provide reasonable notice [of relocation] … shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse. 23 Pa.C.S.A. § 5337(k). … [The trial court] found that Mother regularly suffered from physical abuse by [Appellant] from the moment she moved in with [Appellant] in Pennsylvania. As such[, the trial c]ourt was well within its discretion when [it] mitigated the lack of notice with the history of abuse. Mother is a survivor of domestic violence. [The trial court] do[es] not view what she did as relocating without providing sufficient notice….

Trial Court Opinion, 7/30/24, at 21.

Based on the foregoing, neither of Father's issues entitle him to relief. Discerning no error of law or abuse of discretion, we affirm the trial court's

order granting Mother permission to relocate and awarding her primary physical custody of Child.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2024