J-S08014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| JESSICA BAKER | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN JOSEPH BAKER | : | |
| | : | |
| Appellant | : | No. 2706 EDA 2024 |

Appeal from the Order Entered November 14, 2024
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-60902

BEFORE:   DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 25, 2025**

Ryan Joseph Baker ("Father") appeals *pro se* from the November 14, 2024 order entered in the Bucks County Court of Common Pleas that, *inter alia*, denied Father's petitions for shared legal custody and contempt.  Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. Father and Mother are parents to nine-year-old L.B. and seven-year-old C.B. (collectively, "Children").  They separated on May 15, 2019, while living in Arizona, after almost five years of marriage.  During that time, Father struggled with alcoholism, was verbally and sexually abusive to Mother, was verbally and physically abusive to Children, and was unable to supervise Children properly.  Mother proceeded to seek and obtain an order of protection

_____

[*] Retired Senior Judge assigned to the Superior Court.

in Maricopa County, Arizona, against Father and moved to Bucks County, Pennsylvania, to live with her parents. On July 3, 2019, Mother filed an Emergency Petition for Custody in Bucks County seeking joint legal and sole physical custody of Children. On September 23, 2019, the Superior Court of Arizona in Maricopa County Arizona entered a temporary order awarding Mother sole legal custody and primary physical custody and Father supervised partial physical custody of Children. On December 2, 2019, the Superior Court of Arizona granted Mother's motion to transfer venue to Bucks County, Pennsylvania. Father subsequently moved to Bucks County, Pennsylvania.

In this highly contentious case, both parties have filed numerous petitions for contempt, petitions for emergency relief, and petitions to modify custody. On January 22, 2024, the parties, who were both represented by counsel at the time, entered a custody agreement, and the court issued an order which (1) awarded Mother primary physical custody; (2) awarded Father partial physical custody every other weekend; and (3) gradually increased Father's periods of partial physical custody until April 3, 2024, when the parties would start a shared physical custody schedule. The order also directed that Mother was to continue to have sole legal custody of Children, but held in abeyance a final ruling on Father's request for shared legal custody "due to ongoing concerns about [Father]'s behavior regarding his conduct with [Mother]." Trial Ct. Op., 11/25/24, at 2. The court requested additional documentation from Father's counsel prior to making a decision regarding

- 2 -

shared legal custody. Soon after, Father chose to proceed *pro se* and failed to provide the court with the requested documentation.

On June 17, 2024, Mother filed an Emergency Petition for Special Relief requesting that the court order Father to submit to a hair follicle alcohol screening test due to concerning behavior that Mother witnessed, including appearing at Children's school smelling of alcohol. Emergency Pet., 6/17/23, at ¶ 5-8. On June 20, 2024, Father filed a *pro se* "Counterclaim for Emergency PFSR."

On July 20, 2024, Father married Jessie Bisceglie-Baker ("New Wife").

On July 23, 2024, the court held a custody conference and Father participated *pro se* via telephone from his honeymoon. On July 28, 2024, Father filed a *pro se* motion for contempt against Mother averring that Mother refused to turn over custody of Children on July, 24, 2024. Pet. for Contempt, 7/28/24, at ¶ 4. On August 23, 2024, Mother replied, admitting that she did not make Children available to a third-party on July 24, 2024, after learning that Father was unavailable for his custodial time with Children because he was currently on a cruise for his honeymoon. Answer, 8/23/24, at ¶ 4.

On October 11, 2024, the trial court held a hearing on the outstanding petitions and motions. Father appeared *pro se.*

In sum, Father testified that he has not been drinking alcohol and that if someone saw him at the beer distributor it was because he was picking up hard seltzer for his wife. He further testified that he did not tell Mother he was getting married or going out of the country for his honeymoon because

he felt like Mother would have "withheld custody and I wanted my parents and the entire family to see [C]hildren even though I wasn't there." N.T. Hearing, 10/11/24, at 27. Father testified that he instructed Children not to tell Mother that he got married.

New Wife testified and denied that Husband was drinking alcohol, informed the court that she only drinks alcohol if she goes to work events and then she has a cocktail, and that she "might have" asked Father to pick up hard seltzer for her but could not remember when. *Id.* at 21.

Mother testified that Father failed to inform her that he was getting married or leaving on his honeymoon during his custodial time with Children. Mother further testified that on July 24, 2024, at 9:00 AM, New Wife's mother came to pick up Children while Father was on his honeymoon. Mother explained that she refused to allow New Wife's mother to exercise custody of Children.

After the hearing and upon consideration of the 23 Pa.C.S. § 5328 custody factors, the court denied Father's request for legal custody, denied Father's petition for contempt, ordered Father to pay Mother's attorneys fees, ordered Father to submit to hair follicle testing for alcohol, and ordered that Father was to be the sole person to pick up and drop off Children during custody exchanges absent an emergency.

Appellant timely appealed and subsequently filed a Pa.R.A.P. 1925(b) statement.[1]  The trial court filed a responsive Rule 1925(a) opinion.

In his *pro se* brief, Appellant raises the following issues for our review:

1. Was it an abuse of discretion and/or error of law to withhold legal custody based on the judge's perception of how [Father] interacts with [Mother], rather than basing the decision on the best interests of [C]hildren, as supported by mental health professionals' opinions over the past two years?

2. Was it an abuse of discretion and/or error of law to deny [Father]'s motion for legal custody and prevent [Father] from filing again for six months, despite [Father] providing the proof requested on multiple occasions over the past two years?

3. Was it an abuse of discretion and/or error of law to deny [Father's] motion for legal custody by disregarding the CCES report, psychologist recommendations, and/or other relevant facts?

4. Was it an abuse of discretion and/or error of law to require [Father] to undergo further alcohol testing and provide unnecessary proof for shared legal custody when no new evidence was presented?

5. Was it an abuse of discretion and/or error of law to deny [Father] the ability to have anyone other than himself pick up/drop off [C]hildren, contrary to the order of Parenting Coordinator Esquire Litze, while allowing [Mother]'s mother to handle all pick up/drop-off for [C]hildren?

6. Was it an abuse of discretion and/or error of law to deny [Father's] contempt claim and award restitution in the amount of $2,500 to [Mother]?

---

[1] Father failed to file a Rule 1925(b) statement concomitantly with his notice of appeal prompting the trial court to enter an order directing Father to file a Rule 1925(b) statement; Father complied.  ***See*** Pa.R.A.P. 1925(a)(2)(i); ***In re K.T.E.L.***, 983 A.2d 745, 747 (Pa. Super. 2009) (failure to file a 1925(b) statement concomitantly with a children's fast track appeal is considered a defective notice of appeal and will not be dismissed since failure to file the statement is a violation of a procedural rule and not an order of court).

7. Was it an abuse of discretion and/or error of law to allow the opposing counsel to withdraw the claim that 28 OFW messages were sent to [Mother] in one day, which had previously prevented a decision on legal custody during the May 8, 2024 conference?

8. Was it an abuse of discretion and/or error of law for the judge to exclude or not allow [Father] to present facts and testimony during trial?

9. Was it an abuse of discretion and/or error of law for the judge to fail to provide a fair and impartial trial?

Father's Br. at 14 (reordered and renumbered for ease of disposition).[2]

This Court reviews a custody determination for an abuse of discretion, and "our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation

_____

[2] To the extent that Father raises various additional allegations of trial court error in the argument section of his brief, those arguments are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.") We will only address the issues identified in Father's Rule 1925(b) statement and statement of questions raised on appeal.

omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Indeed, when reviewing child custody matters, "[o]ur paramount concern and the polestar of our analysis" is the best interests of the child. *Saintz*, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." *S.C.B. v. J.S.B.*, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child," including the enumerated factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a). The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular

parent and no preference based upon gender.  23 Pa.C.S. §§ 5327(a) and 5328(b).

In his first five issues, Father avers that the trial court abused its discretion when it denied his motion for legal custody, ordered him to comply with hair follicle testing for alcohol, and ordered him to be the sole individual picking up Children for his custodial time.  Father's Br. at 5-6.  Father essentially raises challenges to the trial court's credibility determinations as well as to the weight of the evidence.

The Honorable Charissa J. Liller has written a comprehensive, thorough, and well-reasoned opinion, including discussion of relevant case law and the Custody Act, citations to the record, and credibility determinations, to explain why the court awarded Mother sole legal custody of Children and ordered Father to comply with alcohol testing and specific pick-up instructions regarding Children.  *See* Trial Ct. Op., 11/25/24, at 3, 6-14.

In sum, the court denied Father's motion for shared legal custody, after considering the Section 5328 custody factors, due to Father's inability to co-parent with Mother and its effect on the Children's well-being.  The court opined:

> The Court denied [Father]'s custody petition, requesting shared legal custody, due to [Father]'s continued resentment and destructive behavior toward [Mother] in respect to the co-parenting relationship; his willful inability to cooperate with [Mother]; the necessity for [Father] to provide additional documentation; and time for [Father] to continue with his counseling and prove he can effectively co-parent with [Mother]. [Father] repeatedly fails to communicate with [Mother] on important matters pertaining to the co-parenting relationship,

such as failing to inform [Mother] when [Father] was getting married and failing to inform [Mother] when [Father] was out of the country and not available for his custodial time.

*Id.* at 3. The court then proceeded to address Father's first five issues in turn.

Following our review, we adopt the trial court's opinion as our own with respect to issues one through five. *See id.* at 3-14 (addressing issues one through five raised in Father's Rule 1925(b) statement and concluding: (1) it is in Children's best interest for Mother to have sole legal custody; (2) the court considered the April 4, 2023 CCES report and psychologist recommendations but placed greater weight on other evidence; (3) Father and New Wife's testimony denying Father's alcohol use was not credible; (4) Father's alcohol abuse poses a safety risk to Children; (5) the high conflict level between Father and Mother originates with Father's behavior and is not in Children's best interest; and (6) when Father sends New Wife to transport Children during custody exchanges it exasperates conflict between the parties.) The record supports the trial court's findings and, as always, we decline to reweigh the evidence or usurp the trial court's credibility determinations. Accordingly, we discern no trial court error.

In his sixth issue, Father avers that the trial court abused its discretion when it denied his contempt claim and awarded attorney's fees in the amount of $2,500 to Mother. Father's Br. at 23. Father argues that Mother failed to abide by the terms of the custody agreement, depriving Father "of his rightful custodial time." *Id.* Father further argues that the imposition of attorney's fees was "unjust." *Id.* at 24.

We review a contempt order for a "clear abuse of discretion." ***Chrysczanavicz v. Chrysczanavicz***, 796 A.2d 366, 368 (Pa. Super. 2002) (citation omitted). We give great deference to the trial court's discretion. ***Id.*** Our review is, thus, "confined to a determination of whether the facts support the trial court's decision." ***Id.*** at 368-69 (citation omitted). Moreover, we likewise review a trial court's award of counsel fees for an abuse of discretion. ***A.L.-S. v. B.S.***, 117 A.3d 352, 361 (Pa. Super. 2015).

"In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence." ***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). To sustain a contempt finding, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***Id.*** (citation omitted).

In custody cases, a trial court may award counsel fees "if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339. "A suit is 'vexatious,' such as would support an award of counsel fees in a child custody case, if it is brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." ***A.L.-S.***, 117 A.3d at 362 (citations omitted).

Father's argument that Mother deprived him "of his rightful custodial time" mischaracterizes the event that prompted him to file for contempt. More

- 10 -

accurately, Mother refused to release Children to the care of a third-party during Father's custodial time without advance notice. Specifically, Father failed to inform Mother that he (1) was getting married; (2) would be out of the country on his honeymoon during his custodial time, and (3) would be leaving Children in the care of a third party, namely his new mother-in-law. When the third-party came to pick up Children, Mother refused to let the third-party exercise custody. Considering these circumstances, the Court concluded that Mother lacked wrongful intent and, instead, it was Father who acted improperly. In sum, "there was no factual basis for granting the [contempt] petition as [Mother] was not in contempt for failing to give [Father]'s new mother-in-law [C]hildren while he was out of the county on his honeymoon." Trial Ct. Op. at 4. We find no abuse of discretion. Moreover, because there was no factual basis for the contempt petition, the court did not err when it awarded Mother attorney's fees. *See A.L.-S.*, 117 A.3d at 362.

In his seventh issue, Father avers that it an abuse of discretion and/or error of law "to allow the opposing counsel to withdraw the claim that 28 OFW messages were sent to [Mother] in one day, which had previously prevented a decision on legal custody during the May 8, 2024 conference[.]" Father's Br. at 13.

In his Rule 1925(b) statement and Statement of Questions Involved, Father presents this issue as an evidentiary challenge. However, in his Argument section, Father pivots and asserts that the trial court erred "by allowing false claims regarding OFW messages to affect the legal custody

- 11 -

decision." ***Id.*** at 26. Father failed to preserve this argument in his Rule 1925(b) statement and, thus, the argument is waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Id.*** at 1925(b)(4)(vii) ("Issues not included in the [s]tatement . . . are waived.").

Finally, we find that Father failed to preserve issues eight and nine for our review. In this eighth issue, Father avers that the trial court abused its discretion when it failed to allow him to present facts and testimony during trial but he fails to identify what evidence he is referring to. Father's Br. at 13. In his ninth issue, Father baldly claims that the trial court abused its discretion when it failed to provide a fair and impartial trial. ***Id.*** Both of these issues are overly broad and, therefore, waived. ***See*** Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."); ***Majorsky v. Douglas***, 58 A.3d 1250, 1258 (Pa. Super. 2012) (explaining that "[a]n overly vague or broad Rule 1925 statement may result in waiver.")

In sum, the trial court did not abuse its discretion when it, *inter alia*, denied Father's petitions for shared legal custody and contempt.

The parties are instructed to attach a copy of the trial court's November 25, 2024 opinion to all future filings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/25/2025

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL DIVISION

JESSICA BUTTIL BAKER      :
     :
     :
v.      :      **No. A06-19-60902**
     :
     :
     :
RYAN JOSEPH BAKER      :
     :

## OPINION

Ryan Joseph Baker, (hereinafter "Appellant"), moving *pro se*, appeals from the Custody Order entered by this Court on October 11, 2024, to the Superior Court of Pennsylvania regarding several supposed issues with this Court's ruling denying Appellant's Shared Legal Custody Petition. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), this Court files this Opinion in support of this Court's ruling.

## I.    FACTUAL AND PROCEDURAL HISTORY

Appellant and Jessica Buttil Baker (hereinafter "Appellee") were married on February 15, 2014, and are the biological parents of L.B., born on 12/15/2015, and C.B., born on 10/20/2017.[1] Appellant resided at 3401 East Camelback Road, Phoenix, Arizona when the original petition was filed.[2] Appellee currently resides at 95 Charlotte Drive, Churchville, Pennsylvania.

The parties separated on May 17, 2019, while both lived in Arizona, with the children.[3] After the parties separated, Appellee and her children fled to her parents' home in Bucks County, Pennsylvania because of Appellant's ongoing and dangerous behavior towards Appellee and the minor children.[4]

---

[1] See Appellee's Emergency Petition for Custody at pgs. 1-2.
[2] Id.
[3] Id. at 2.
[4] Id. at 2-3.

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

At the time, Appellant severely struggled with alcoholism, was verbally and sexually abusive to Appellee, was verbally and physically abusive to his minor children and was incapable of supervising his children.[5] As such, Appellee filed for, and received, an Order of Protection in Maricopa County, Arizona.[6] On July 23, 2019, Appellee filed an Emergency Petition for Custody and sought Joint Legal and Sole Physical Custody for both children, while both children were in the custody of Appellee.[7] On September 20, 2019, Appellee filed a Petition to Modify Custody (Accept Jurisdiction), requesting that Bucks County, Pennsylvania should assume said jurisdiction if Arizona chose to relinquish it.[8] Appellee and her children continue to reside with her parents in Bucks County and have a strong family support system within the Bucks County area.[9]

Since filing the original Petition for Custody, both parties filed numerous Petitions for Contempt and Sanctions, and Petitions to Modify Custody. Additionally, Appellant has moved four times from Arizona to his current address since 2019. Appellant now resides at 410 Holly Knoll Drive, Churchville, PA 18966 with his new wife, Jessica Bisceglie-Baker (hereinafter "Appellant's wife"), and her two (2) minor children. Appellant and his wife were married on July 20, 2024.[10]

The parties ultimately reached an agreement regarding custody, (after a few days of testimony), and an Order was entered by Agreement on January 22, 2024.[11] In that Order, the Court held the issue of shared legal custody in abeyance due to ongoing concerns about Appellant's behavior regarding his conduct with Appellee. Upon agreement of counsel, the Court held an off the record telephone conference with counsel on May 8, 2024, to address shared legal custody.[12] Additional documentation

---

[5] Id.
[6] See Appellee's Emergency Petition for Custody, Ex. A.
[7] Id.
[8] See Appellee's Petition to Modify Custody (Accept Jurisdiction) at 4.
[9] Id.
[10] (10/11/24 N.T. p. 20).
[11] See January 22, 2024, Custody Order.
[12] (10/11/24 N.T. p. 4).

2

was requested from counsel before said decision would be rendered.[13] Days later, Appellant chose to proceed *pro se* and the documents were never provided to Chambers.

Appellee filed an Emergency Petition for Special Relief on June 17, 2024, and requested that Appellant receive a hair follicle alcohol screening test, due to "concerning behavior" from Appellant.[14] Appellant filed a "Counterclaim for Emergency PFSR" on June 20, 2024, and Appellee motioned for a hearing date on June 21, 2024. A custody conference occurred on July 23, 2024. Since Appellant was on his honeymoon, he participated telephonically in the conference. Subsequently, five days later, Appellant filed a Petition for Contempt on July 28, 2024. Appellee then filed an Answer to the Counterclaim of Petition for Contempt on August 23, 2024.

A hearing was held before the Honorable Charissa J. Liller on October 11, 2024, regarding all pending motions. Since Appellant was *pro se*, the Court conducted a conference/informal hearing with the parties and counsel on the record, took testimony and heard arguments. The Court denied Appellant's custody petition, requesting shared legal custody, due to Appellant's continued resentment and destructive behavior toward Appellee in respect to the co-parenting relationship; his willful inability to cooperate with Appellee; the necessity for Appellant to provide additional documentation; and time for Appellant to continue with his counseling and prove he can effectively co-parent with Appellee. Appellant repeatedly fails to communicate with Appellee on important matters pertaining to the co-parenting relationship, such as failing to inform Appellee when Appellant was getting married and failing to inform Appellee when Appellant was out of the country and not available for his custodial time. The Court advised Appellant that it would consider awarding joint legal custody in the future if Appellant began to effectively communicate with Appellee regarding matters pertinent to the co-parenting relationship, and if he continued counseling sessions with Dr. Frajerman to work on

---

[13] Id. at 1-6.

[14] See Appellee's Emergency Petition for Special Relief for Hair Follicle Testing and Alcohol Screen, filed June 17, 2024.

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

his inability to cooperate with Appellee. The Court wanted documentation (or testimony) from Dr. Frajerman, identifying Appellant's progress towards his goals and issues, as well as some proof that Appellant is taking responsibility for his actions, with respect to his co-parent relationship (versus blaming Appellee for all their negative interactions).

The Court denied Appellant's contempt claim, with prejudice, because there was no factual basis for granting the petition as Appellee was not in contempt for failing to give Appellant's new mother-in-law the children while he was out of the country on his honeymoon. The Court further awarded attorney's fees in the amount of $2,500.00 to Appellee and ordered that Appellant pay them within thirty days. Appellant was also ordered: to get a hair follicle test done for alcohol; not to consume alcohol; and to continue with counseling.

On October 15, 2024, Appellant filed a Motion for Recusal, alleging that the Court was biased and prejudicial when it denied both of his petitions. On October 22, 2024, Appellant's Motion for Recusal was denied and dismissed. On November 14, 2024, the Court filed an Order detailing its decision to deny Appellant's Shared Legal Custody Petition.

## II.     STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

A custody order on appeal is designated as a "Children's Fast Track Appeal" as defined by Pa. R.A.P. 102. Pursuant to Pa. R.A.P. 1925(a)(2), an appellant must file a statement of errors complained of on appeal concomitant with the notice of appeal. On October 15, 2024, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania, but failed to file a Statement of Errors Complained of on Appeal as required by Pa. R.A.P. 1925(a)(2). This Court was required then to order Appellant to file, within twenty-one days of the Order, a Concise Statement of Matters Complained of on Appeal on October 23, 2024. Appellant subsequently filed his statement on October 31, 2024. Accordingly, any issues Appellant raised are untimely and therefore waived. Pa.R.A.P. 1925(b)(3)(iv); Mudge v. Mudge, 6 A.3d 1031 (Pa. Super. 2010). Further, Appellant's statement lacks clarity as it is riddled with

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

grammatical errors, misspelled words and incomplete sentences. Nonetheless, this Court will explain its decision not to modify the parties' custody arrangement and has reproduced Appellant's statement here, verbatim and including any error, for review:

A. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO REQUIRE MR. BAKER HAVE TO DO FURTHER ALCOHOL TESTING/REQUIRE MORE UNESSASSARY PROOF FOR SHARED LEGAL CUSTODY WHEN NO EVIDENCE WAS PRSENTED?

B. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO DENY MR. BAKER'S CONTEMPT CLAIM AND ORDER RESTITUTION IN THE AMOUNT OF $2,500.00 TO MS. BUTTIL BAKER?

C. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO DENY MR. BAKER'S MOTION FOR LEGAL CUSTODY AND FURTHER NOT LET MR. BAKER FILE FOR 6 MONTHS WHEN MR. BAKER HAS PROVIDED PROOF ASKED FOR ON MULTIPLE OCCATIONS OVER THE PAST 2+ YEARS?

D. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO ALLOW OPPOSING COUNSEL TO WITHDRAW CLAIM OF 28 OFW MESSAGES SENT TO MS. BUTTIL BAKER IN ONE DAY THAT PREVENTED LEGAL CUSTODY ON MAY 8, 2024, CONFRENCE?

E. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO NOT ALLOW MR. BAKER HAVE ANYONE OTHER THAN HIM PICK UP/DROP OFF CHILDREN AND GO AGAINST PARENTING COORDINATOR, ESQUIRE LITZKE'S ORDER TO ALLOW MR. BAKER'S WIFE TO PICK UP BUT NOT REQUIRE MS. BUTTIL BAKER TO DO THE SAME AND FURTHER ALLOW MS.

BUTTIL BAKER'S MOTHER, JUDITH BUTTIL TO DO ALL PICK UP/DROP OFF'S OF 2 MINOR CHILDREN?

F. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO WITHOLD LEGAL CUSTODY BASED ON HOW JUDGE PRECEIVES MR. BAKER INTERACTS WITH MS. BUTTIL BAKER AND HAS NOT BEEN BASED ON THE BEST INTEREST OF CHILDREN ACCORDING TO MENTAL HEALTH PROFFESSIONAL OPINIONS OVER THE PAST 2 YEARS?

G. WAS IT AN ABUSE OF DISCRETION/ERROR OF LAW FOR THE JUDGE TO EXCLUDE/NOT ALLOW FACTS AND TESTOMONY FROM MR. BAKER DURING TRIAL?

H. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW TO DENY MR. BAKER'S MOTION FOR LEGAL CUSTODY BY DISREGARDING CCES REPORT, PSYCOLOGIST RECOMMENDATIONS AND/OR ANY RELEVENT FACTS?

I. WAS IT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW FOR JUDGE TO NOT HAVE A FAIR AND IMPARTIAL TRIAL?

## III.  DISCUSSION

*Standard of Review*

When a custody decision is appealed, the reviewing court is "bound by findings supported in the record and may reject conclusions drawn by the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court." Arnold v. Arnold, 847 A.2d 674, 677 (Pa. Super. 2004). Thus, appellate courts may only reverse a decision involving the custody of a minor if the trial court commits a gross abuse of discretion. Yates v. Yates, 963 A.2d 535, 538 (Pa. Super. 2008). This means only "if a trial court, in reaching its conclusions, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the

6

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." Yates, 963 A.2d at 538. Further, the Superior Court of Pennsylvania has stated that "on issues of credibility and the weight of the evidence, appellate courts must defer to the findings of the trial court because that court had the opportunity to observe the proceedings and demeanor of the parties and their witnesses." A.V. v. S.T., 87 A.3d 818, 820 (Pa. Super. 2014). Additionally, "appellate interference is allowed only where it is found that custody order is manifestly unreasonable as shown by the evidence of record." Yates, 963 A.2d at 538.

The law governing child custody determinations is well-settled. The Superior Court has stated that "the paramount concern is the best interest of the child based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." Speck v. Spadafore, 895 A.2d 606, 609 (Pa. Super. 2006) (citing Swope v. Swope, 689 A.2d 264, 265 (Pa. Super. 1997)). In deciding what is in the child's best interest, the Court is required to consider the custody factors set forth at 23 Pa. C.S. § 5328. In a custody action, "the particular circumstances of the case must be considered, and each case decided on its own individual facts." N.H.M. v. P.O.T., 47 A.2d 1268, 1273 (Pa. Super. Ct. 2008); E.A.L. v. L.J.W., 662 A.2d 1109, 1118 (Pa. Super. 1995).

### A. This Court Did Not Abuse its Judicial Discretion nor Erred as a Matter of Law When It Denied Appellant's Petition for Shared Legal Custody (Since Appellant's Concise Statement Included Separate Claims of Error All Related to This Court's Legal Custody Decision, "A, C, E, F & H" Shall Be Addressed Below).

Appellant first alleges that this Court abused its judicial discretion and erred as a matter of law when it denied Appellant's petition for shared legal custody and ordered that he may not re-petition for shared legal custody for six (6) months. Appellant also alleges that it was an abuse of discretion and error of law for the Court to order Appellant to submit to "further alcohol testing."

It is well established that this Court is required to consider "[a]ll of the factors listed in section 5328(a)...when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011). However, this Court need not consider all the factors with the same weight. M.J.M. v. M.L.G., 60 A.3d

331, 339 (Pa. Super. 2013). Rather it is within our purview as the finder of fact to determine which factors are most salient and critical in the present case. Id.

On November 14, 2024, this Court issued an Order addressing the 16 custody factors under 23 Pa. C.S. §5328(a).[15] In this Order, the Court provided an in-depth analysis as to why its denial of Appellant's shared legal custody petition is well-founded.[16]

First, the Court has ongoing concerns with Appellant's ability to ensure the safety of the children, if he is indeed drinking alcohol again, as well as how his ongoing alcoholism is affecting the well-being of the children.[17] Appellant is a recovering alcoholic and has a history of being emotionally and physically abusive to Appellee and the children.[18] The Court is also seriously concerned that Appellant has continued to engage in drinking even though this Court ordered him not to do so.[19] Appellee stated to this Court that she smelled alcohol on Appellant during several of their custody exchanges and Appellant was also seen at the Richboro Beer Distributor earlier this year.[20] Although Appellant testified that he does not drink alcohol, he is unable to recall the exact date that he last had a drink, which is highly unusual for someone truly in sobriety, in this Court's experience.[21]

Moreover, this Court is concerned that Appellant and his new wife lied to this Court about his alcohol use due to their conflicting testimony regarding why Appellant was seen buying alcohol at the Richboro Beer Distributor this summer.[22] Appellant testified that his "wife drinks seltzers" and he picks them up for her while he is out running other errands.[23] When his wife testified, (after being sequestered), however, she said she "only" drinks if she goes to "like a work event" and she will have

---

[15] See The Court of Common Pleas Custody Order at 1.
[16] Id.
[17] Id.
[18] Id.
[19] Id.
[20] (10/11/24 N.T. p. 11).
[21] See The Court of Common Pleas Custody Order at 8.
[22] Id. at 9.
[23] (10/11/24 N.T. p. 12).

8

a "cocktail or something."[24] The Court then clarified with her that she only consumes alcohol at work events ("social thing") and she further testified she does not consume alcohol at home.[25] When the Court asked her why Appellant would be seen at the Richboro Beer Distributor, she said she did not know.[26] Upon being directly questioned if she asked Appellant to go there for her, she looked at Appellant before answering, "I might have."[27] Appellant's wife then claimed that she has previously asked Appellant to get her "something" if she was "like going to an event or something."[28] Due to Appellant's prior history of alcohol addiction, abusive conduct, and considering Appellant and his wife's conflicting testimony, which the Court found incredible, this Court believes it is in the children's best interest to determine whether Appellant is drinking again, and finds it imperative that Appellant receives a hair follicle test for possible alcohol use.

Second, this Court has consistently determined and concluded that Appellant is unable to effectively communicate with Appellee regarding their children, which has led to a high level of conflict between the parties. Appellant has consistently demonstrated his unwillingness to cooperate with Appellee on matters related to custody, and this Court believed it is due to Appellant's resentment toward Appellee, for a variety of reasons. At the October 11, 2024, hearing, Appellant admitted that he intentionally failed to communicate with Appellee regarding the date of his upcoming wedding.[29] Appellant also told his children not to tell Appellee when the wedding and honeymoon were taking place.[30]

Furthermore, Appellant left the country for his honeymoon during his custodial time and sent his new mother-in-law to pick up the children from Appellee, without informing Appellee in any way

---

[24] Id. at 20-21.
[25] Id.
[26] Id.
[27] Id.
[28] Id. at 22.
[29] See The Court of Common Pleas Custody Order at 2.
[30] Id.

9

that he was out of the country, or even simply away, during his scheduled custodial time.[31] When the new mother-in-law arrived at Appellee's home to pick up the children, Appellee rightfully refused to release the children to her.[32] When Appellant was directly asked by this Court as to whether he thought this failure to communicate this information was appropriate, his reply was that his "entire family was in town for the wedding..."[33] Since he did not directly answer the question, the Court then inquired as to why he did not tell Appellee he was unavailable for his custody time.[34] His reply was, "You know, we haven't told each other who is picking who up, you know."[35] The Court then pressed further and reminded Appellant this is not simply a "pick-up", and his reply was again evasive, and he shifted the blame to Appellee; Appellant stated "Grandmother picks up the children and I don't know where they're going. Also, I don't know where (Appellee) is either, she doesn't communicate when the (ex) mother-in-law picks the children up."[36] When the Court pointed out to Appellant that he is yet again not taking responsibility for his conduct, but instead blaming Appellee for his behavior, he continued to blame her in his response.[37] Appellant stated he did not tell Appellee he was unavailable for his custodial time because he "(felt) like she would have withheld custody..."[38] As such, it is of high concern to this Court that Appellant planned all of this without advising Appellee of any of this information, let alone requesting her consent to this alternative custody arrangement.[39] Finally, Appellant freely admitted that he "reflected" on this failure to communicate with Appellee, and he still felt that withholding this information was the "right decision."[40] It is extremely worrisome to this

---

[31] (10/11/24 N.T. pgs. 24-25).
[32] Id.
[33] Id. at 25.
[34] Id.
[35] Id.
[36] Id. at 26.
[37] Id. at 26-27.
[38] Id.
[39] See The Court of Common Pleas Custody Order at 2.
[40] (10/11/24 N.T. p. 13).

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

Court that Appellant will not accept any responsibility for his own conduct, and the role this plays in his high conflict relationship with Appellee.

Third, this Court is concerned that Appellant continues to have his new wife engage in custody exchanges and transportation for the children even though he is barely working and is more than available to provide these parental duties to the children himself.[41] When Appellee pointed out that Appellant is not doing the pick-up and drop-off of the children at the custody exchanges, and his new wife continues to be involved in the custody exchanges, this Court asked Appellant why this was happening.[42] Appellant claims he typically is there with his wife for the exchanges at Rainbow Academy, but his wife walks the children to the door to "avoid conflict."[43] Appellee works at Rainbow Academy and is usually the person at the door, but Appellee said if someone else is working, she would step back and let her co-worker answer the door when the children arrive.[44] Appellant said this practice has "worked out really well" and he confidently stated that Appellee "would attest to that as well."[45] Not surprisingly, Appellee did not agree that Appellant sending his then girlfriend, now wife, to custody exchanges was the best way to avoid conflict.[46] The Court is also concerned that Appellant is avoiding the custody exchanges so that Appellee does not smell alcohol on him if he is drinking again, as she alleged in her petition requesting the alcohol testing.

Moreover, in his "Concise" Statement, at subsection "E", Appellant asserts that this Court committed an error of law and/or abuse of discretion when it required only him to participate in custody exchanges of the children, absent an emergency, but not require the same of Appellee and yet allow her mother to pick-up the children. This assertion reiterates this Court's finding that Appellant

---

[41] Id. at 7.
[42] (10/11/24 N.T. pgs. 35-36).
[43] Id. at 36.
[44] Id.
[45] Id. at 36-37.
[46] Id. at 37-38.

11

perpetually blames Appellee for all issues. Rather than listening to this Court's rationale as to why his wife should not be involved in custody exchanges, especially when he is so readily available to do it himself, he instead turns his focus to Appellee and what she is permitted to do versus him. As such, due to Appellant's consistent inability to communicate and cooperate with Appellee regarding custody exchanges, this Court did not commit an abuse of discretion nor err as a matter of law when it ordered that Appellant only shall pick-up/drop-off the children, absent an emergency.

Fourth, this Court notes that the level of conflict between the two parties is particularly high. Both children continue to suffer from incontinence issues, which concerns this Court based on their respective ages of almost nine and seven years old. The Court noted that it is concerned that the animosity between the parents, originating with Appellant, may be affecting the children and potentially causing these physical manifestations.[47] Appellant continually exhibits defensive, blaming, and resentful behavior towards Appellee, and as stated, *supra*, even blames Appellee for his own conduct.[48] During testimony at the custody hearing on September 28, 2023, this Court pointed out to Appellant that he continually blamed Appellee for literally every "infraction" he raised regarding their custody schedule and communications, yet he continued this pattern.[49] Appellant's blame-shifting behavior continued at the most recent hearing on October 11, 2024.[50] This Court pointed out Appellant's behavior to him multiple times, over the course of the hearings in September 2023, and at the hearing on October 11, 2024, yet he remains unwilling to comprehend how his behavioral issues, resentment, and unwillingness to cooperate with Appellee are affecting his co-parenting relationship with Appellee.[51]

---

[47] (10/11/24 N.T. p. 49-50).
[48] See The Court of Common Pleas Custody Order at 7.
[49] Id.
[50] Id.
[51] Id.

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

Finally, Appellant asserted in his Concise Statement that this Court committed error, and/or abused its discretion, when it "disregarded" the CCES report from April 4, 2023, regarding a recommendation for legal custody. While the Court is required to consider the opinions of experts, it is "not bound by these opinions and has the responsibility for making its own decision." Jacob v. Shultz-Jacob, 923 A.2d 473, 479 (Pa. Super. 2007). Further, if the trial court chooses not to follow the expert's recommendations, then "its independent decision must be supported by competent evidence of record." Nomland v. Nomland, 813 A.2d 850, 854 (Pa. Super. 2002).

As noted previously at the hearings in September 2023, and in this Court's November 14, 2024 Order, the Court had concerns about the CCES report. Neither the CCES evaluator nor the co-parent coordinator reported witnessing the blaming, resentful behaviors that Appellant repeatedly exhibited during his testimony at the hearings in September 2023 and continued to exhibit at the October 11, 2024, hearing.[52] This Court considered the CCES report, psychologist recommendations and relevant facts, regarding Appellant's conduct and co-parenting relationship with Appellee, when determining Appellant's shared legal custody petition. Although this Court appreciates that Appellant is actively seeking therapy, this Court recognizes that Appellant continues to fail to take responsibility for his own actions in the co-parenting relationship.[53] In order for Appellant's shared legal custody petition to be granted, this Court stated that Appellant needs to focus on himself and his responsibility for his actions, instead of coming to Court and complaining about Appellee, and blaming her for all issues, including his own.[54]

This Court is severely troubled with Appellant's ongoing behavior, his rocky history with alcohol addiction, and his constant unwillingness to cooperate with Appellee. This Court also finds that Appellant's lack of productive, mature communication and his defensiveness and resentment

---

[52] Id.
[53] Id. at 9.
[54] Id. at 7.

13

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

towards Appellee contribute to his destructive behavior in respect to the co-parenting relationship. Unfortunately, despite several positive statements regarding Appellant in the CCES report, Appellant's negative and self-sabotaging actions are of significant concern to this Court.[55] This Court considered Appellant's and Appellee's entire history, and the best interest of the children, when making this Decision and correctly determined that denying Appellant's petition for shared legal custody is well-founded and is in the best interest of the children, at this time.[56]

### B. This Court Did Not Abuse its Judicial Discretion When It Denied Appellant's Contempt Claim and Ordered Attorney's Fees ("Restitution" per Appellant) to Appellee.

Appellant next alleges that this Court abused its judicial discretion and erred as a matter of law when it denied Appellant's contempt claim and subsequently ordered "restitution" (attorney's fees) to Appellee. Appellant filed a Petition for Contempt on July 28, 2024, days after the Custody Conference was held in this matter and argued that Appellee was in contempt of the custody order because she did not give the children to Appellant's new mother-in-law during his custodial time. Appellant, however, never notified Appellee that he would be out of the country, or even simply away, during his custodial time.[57]

This Court has ongoing concerns with Appellant's lack of relevant, cooperative communication and his filing of unreasonable petitions in which he subjects Appellee to further court costs and attorney's fees.[58] Even during the proceeding, Appellant could not fathom why he should have informed Appellee that he was out of the country during his custodial time, and why he is not automatically entitled to have some third party take custody of his children without having discussed it first with Appellee. This Court determined that Appellant's Petition for Contempt was frivolous

---

[55] Id. at 10.
[56] Id. at 10.
[57] (10/11/24 N.T. p. 27).
[58] Id.

because Appellant chose to withhold important and relevant information regarding his whereabouts during the custodial time in question.[59] It is further reasonable for this Court to order Appellant to pay an award of attorney's fees to Appellee for subjecting Appellee and this Court to such a baseless petition. Thus, this Court exercised its rightful judicial discretion when it denied Appellant's contempt claim and ordered Appellant to pay an appropriate amount of attorney's fees to Appellee.[60]

### C. This Court Did Not Abuse its Judicial Discretion nor Erred as a Matter of Law When It Denied Appellant's Petition for Shared Legal Custody.

This issue is addressed in subsection A.

### D. This Court Did Not Commit Abuse of Judicial Discretion nor Erred as a Matter of Law When It Allowed Opposing Counsel to Withdraw Their "Claim".

Appellant next alleges that this Court abused its judicial discretion and erred as a matter of law when it allowed opposing counsel to withdraw one of their "claims". To clarify, this was not a claim raised in a pleading; instead, it was an issue raised during the May 8, 2024, telephone conference with counsel only. Appellee claimed that Appellant sent 28 Our Family Wizard ("OFW") messages in one day.[61] Later in the hearing, opposing counsel withdrew their claim; however, Appellant continually tried to address the withdrawn claim.[62]

Pennsylvania Courts have consistently held that "judges have the inherent power to govern the course of conduct of cases before them, subject to review, using the abuse of discretion standard." Deitrich v. Deitrich, 55 A.2d 393 (Pa. Super. 1989)(See also G.B. v. M.M.B., 670 A.2d 714 (Pa. Super. 1996)(where the court found that the trial judge's adverse rulings were not motivated by bias but rather by the judge's determination that mother intended to interfere with father's relationship with the

---

[59] Id. at 28.
[60] Id. at 28-30. Appellee's counsel asked for $3,500.00 in attorney's fees, the Court awarded $2,500.00.
[61] Id. at 5.
[62] Id. at 48-49.

children)). As such, admission or exclusion of evidence is within the discretion of the trial court. A.J.B. v. M.P.B., 945 A.2d 744, 749 (Pa. Super. 2008).

This Court asserts that its judgment was not manifestly unreasonable, nor was it motivated by prejudice, bias or ill will against Appellant. Since opposing counsel withdrew their issue, Appellant was not required to respond.[63] Further, as stated, it is within this Court's discretion to determine whether to proceed on a withdrawn claim. Thus, this Court did not abuse its discretion when it denied Appellant's opportunity to respond to the withdrawn issue, and the subject matter of that issue was not utilized in any way in this Court's ultimate findings and Order.

### E. This Court Did Not Commit Abuse of Judicial Discretion When It Did Not Allow Appellant to Have Anyone Other Than Him Pick Up/Drop Off the Children.

This issue is addressed in subsection A.

### F. This Court Did Not Commit Abuse of Judicial Discretion When It Withheld Legal Custody from Appellant Because the Court Has Constantly Observed Appellant's Unproductive Behavior and Unwillingness to Cooperate with Appellee.

This issue is addressed in subsection A.

### G. This Court Did Not Commit Abuse of Judicial Discretion When the Court Allegedly Excluded Appellant's Testimony During Trial.

Appellant alleges that this Court abused its judicial discretion and erred as a matter of law when the Court allegedly excluded Appellant's testimony during trial. As identified in the most recent hearing, Appellant had ample opportunities to provide testimony, so this assertion is not accurate. This Court provided Appellant with multiple chances to thoughtfully explain why his communication with Appellee is lacking, and why he continually remains unwilling to cooperate with Appellee.[64] Unfortunately, it is discouraging to this Court that Appellant chose to use his testimonial time as an

---

[63] Id.
[64] Id. at 13, 25-27.

16

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

opportunity to shift all the blame onto Appellee.[65] Appellant seems to view himself as the perpetual victim in all of his issues with Appellee and this resentment has created a situation where all Appellant does is blame Appellee for every perceived infraction in their custody matter. Further, Appellant never asserted that he had anything more he wanted to testify about, other than the issue that was withdrawn by Appellee, when the Court inquired at the end of the proceeding if he had anything else he wanted to address.[66]

### H. The Court Did Not Commit Abuse of Judicial Discretion Because It Considered the CCES Report, Psychologist Recommendations and Relevant Facts When Making Its Legal Custody Decision.

This issue is addressed in subsection A.

### I. Appellant Received a Fair and Impartial Trial and As Such, The Court Did Not Commit Abuse of Judicial Discretion.

Appellant finally alleges that this Court abused its judicial discretion and erred as a matter of law when it denied him a fair and impartial trial. The trial judge must conduct the trial in an impartial manner and ensure that each litigant receives a fair and impartial trial. Downey v. Weston, 301 A.2d 634, 642 (Pa. 1973). To ensure impartiality and fairness to all parties, a judge must be "objective and open-minded." Pa. C.J.C. Rule 2.2. When applying and interpreting the law, a judge sometimes may "make good-faith errors of fact or law, and such errors of this kind do not violate the obligation of impartiality." Id. Further, every unwise or irrelevant remark made during a trial by a judge does not compel the granting of a new trial. However, a new trial is required when "the remark is prejudicial, that is, when it is such a nature or substance, or delivered in such a manner, that it may reasonably be said to have deprived the defendant of a fair and impartial trial." Com. v. Goosby, 301 A.2d 673, 674 (Pa. Super. 1973).

---

[65] Id. at 26.
[66] Id. at 48.

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

As previously stated, this Court provided Appellant with ample opportunities to present testimony and provide factual assertions; however, Appellant chose to use his testimonial time to shift blame and engage in juvenile and destructive behavior towards Appellee.[67] Appellant consistently blames Appellee in most of his prior and present testimony and continues to demonstrate a lack of understanding as to how his own conduct is creating high conflict between the parties. Since Appellant has not further detailed why he believes this Court did not provide a fair and impartial trial, other than his bald assertion, and the fact that this Court ruled against him, the Court has nothing further to add, and relies on the rationale in this Opinion, *supra*. As such, this Court finds that Appellant's assertion that he did not receive a fair and impartial trial is unfounded.

## IV.    CONCLUSION

For the aforementioned reasons, this Court believes that the issues which Appellant has complained of in his Concise Statement are without merit. Accordingly, this Court respectfully submits that Appellant's Appeal be denied.

BY THE COURT:

DATE: 11/25/2024

CHARISSA J. LILLER, J.

N.B. It is your responsibility
to notify all interested parties
of the above action.

---

[67] Id. at 44.

Case# 2019-60902-152 - JUDGE:41 Received at County of Bucks Prothonotary on 11/26/2024 8:35 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

## COPIES EMAILED NOVEMBER 26, 2024 TO

RYAN JOSEPH BAKER
Email: baker136@hotmail.com

*Pro se Appellant*

SHERYL RENTZ
Email: sheryl@srrentzlaw.com

*Attorney for Appellee*          Jessica Baker